PHILIP H. DE LANE, JOHN M. CHILES, MARTHA C. CHILES, JOHN E. LYKES, AND GRACE A. LYKES, APPELLANTS, *v.* ANDREW B. MOORE, AND JAMES L. GOREE, EXECUTORS OF JAMES L. GOREE, DECEASED.

Where an antenuptial contract was alleged to have been made, and the affidavits of the parties claiming under it alleged that they never possessed or saw it; that they had made diligent inquiry for it, but were unable to learn its present existence or place of existence; that inquiry had been made of the guardian of one of the children, who said that he had never been in possession of it, and did not know where it was; that inquiry had been made at the recording offices in vain, and that the affiants believed it to be lost; secondary proof of its contents ought to have been admitted.

Whether recorded or not, it was binding upon the parties. If recorded within the time prescribed by statute, or if reacknowledged and recorded afterwards, notice would thereby have been given to all persons of its effect.

If it was regularly recorded in one State, and the property upon which it acted was removed to another State, the protection of the contract would follow the property into the State into which it was removed.

But where no suit was brought until eight or nine years after the death of the husband, and then the one which was brought was dismissed for want of prosecution; another suit against the executors who had divided the property, comes too late.

THIS was an appeal from the District Court of the United States for the Middle District of Alabama.

The case is fully stated in the opinion of the court.

It was argued by *Mr. Johnson* and *Mr. Butler*, for the appellants, and *Mr. Bradley* and *Mr. Davidge*, for the appellees.

The counsel for the appellants, after stating the case, proceeded:

It appears, from the record, that the defendants objected to the reading of the papers of the marriage settlement, because the affidavits of the complainants did not make out such a case of the loss or destruction as would dispense with the production of the original. The objection was sustained by the presiding Judge. By the ruling of the Judge, the complainants' bill was ordered to be dismissed.

It is submitted, that the ruling of the Judge was erroneous; and if it should be sustained here, the complainants must fail in any attempt to recover their rights, because they cannot be allowed to introduce the only evidence on which they rest.

The evidence offered by the complainants, and rejected by the court, was both competent and sufficient to satisfy a Judge, when discretion must, on such questions, regulate his judgment; and especially so in the chancery jurisdiction of the court, where it is usual to receive with a liberal latitude, *sub modo* at least, all evidence that can lead to a competent judgment on the rights of the parties. The bill was filed by those who were seeking their rights by discovery, and against the acts of those who had a temptation to destroy the evidence against them. But it is submitted, that the question has been authoritatively ruled by the court; and, according to the adjudged cases on the same subject in Alabama, where this case was tried, the evidence rejected should have been admitted. Tayloe *v.* Riggs, 1 Pet. 591, 596; S. C. 9 Wharton, 483; Winn *v.* Patterson, 9 Pet. 663, 676; S. C. 5 Pet. 233, 240, 242; Sturdevant *v.* Gaines, 5 Ala. 435; Slerge *v.* Clapton, 6 Ala. 589.

If the evidence rejected by the Judge, as to the reading of the marriage settlement, should have been received, as we think it should, then it may become necessary to bring in review the questions made by the defendants' answer.

Was the marriage settlement duly and legally recorded in South Carolina. By the laws of South Carolina (see act of 1786 and 1823) marriage settlements, according to the first act, are required to be recorded in the office of the Secretary of State, and by the second act, also, in the office of Register of Mesne Conveyances, within three months after their execution, otherwise they will be regarded as void at law. The marriage settlement, in this case, was executed on the 20th May, and if

recorded before the 20th of August, would have been duly recorded, according to the requirements of the act of 1786. It appears from Guiguard's official certificate, that the paper was recorded in the Register of Mesne Conveyances, on the 31st day of July, 1816, the day on which it was proved by Young, one of the witnesses to it.

The certificate of Arthar, the deputy Secretary of State, is not definite as to the time when the paper was recorded in the office of the Secretary of State. There is no doubt, however, that it had been first recorded in that office, as such should have been done, according to the act of 1786, (which is the only act affecting this case.) We think such must be the conclusion of the court, as scarcely any other fair inference could be drawn from the premises. If such should be the holding of the court, a second proposition arises, was it necessary that it should have been recorded in Alabama?

According to the tenor of the decisions of this court, it was not necessary that there should be such a recording to protect the rights of the complainants against the claims of a subsequent purchaser.

"A marriage settlement or deed, in favor of the wife, duly executed and recorded in Virginia, will be good against the creditors in the District of Columbia, although they may have had no express notice. Bank *v.* Lee, 13 Peters, 119, 120. Such has been the current of decisions in South Carolina and Alabama?

But the complainants have a right, from the proof in the record, to take refuge in the equity of their rights.

According to the evidence of W. R. Hamilton, Goree, the testator of defendants, who seems to have been a shopkeeper, purchased the slave in question, with express notice of complainants' title, by the marriage settlement of their mother with Yancey. The testimony of Hamilton was duly taken; for, if defectively taken in the first instance, the defendants had an opportunity, and were required, to retake it, if they chose, by an express agreement of the parties.

Such being their condition — that is, purchasers with express notice — he, Goree, took the property subject to the acknowledged claims of the complainants, and having taken under their title, he should not be allowed to claim against it.

The doctrine of notice is well established. He who acquires a legal title, having notice of the prior equity of another, becomes a trustee for that other to the extent of his equity. 1 Cranch, 100.

If a man will purchase, with notice of another's right, giving a consideration will not avail him. 2 Bridgman's Digest, Vendors and Purchasers, IX. 691.

De Lane et al. v. Moore et al.

With respect to the operation of the statute of limitations upon cases of trust in equity, the distinction is, if the trust be constituted by act of the parties, the possession of the trustee is the possession of the *cestui que trust*, and no length of such possession will bar; but if a party is constituted a trustee by the decree of a court of equity founded on fraud, or the like, his possession is adverse, and the statute of limitations will run from the time that the circumstances of the fraud were discovered. 2 Bridgman's Digest, 252.

In the case of Miller *v.* Kershaw, marriage settlement was held void at law; in equity, however, the party claiming under the settlement, would be protected where the purchaser had actual notice of the settlement. Bayley's Equity, 481.

If the foregoing propositions can be sustained, another question arises, and that is, can the defendants claim to be protected by the statute of limitations? The complainants allege, in their bill, that they were minors at the death of their mother, and could not assert their rights, under the marriage settlement, as remaindermen, after the death of Yancey, their step-father. They aver, furthermore, that they were ignorant as to the time of Yancey's death, from their distant and separated situations. It is also stated expressly in their bill, (and it is a bill of discovery,) that they were not informed as to the time when a fraud had been committed upon their rights, to wit, when Yancey sold, and Goree purchased, with a full disclosure and knowledge of their title. This reduces the parties to the relation of trustee and *cestui que trust*, and exempts the complainant from the operation of the statute of limitations.

Purchaser from mortgagor, with notice, cannot claim by possession against a mortgage. Thayer *v.* Craner, 1 McCord, 395.

Court of Equity, bound by statute, upon legal title and demands, except in cases which are excepted upon purely equitable principles, such as trust, fraud, &c. Van Rhyn *v.* Vincent, 1 McCord, 314.

In cases of fraud, it runs from the time the fraud has been discovered. Id. 4 Dess. Rep. 480.

If one intrudes upon the rights of an infant, and takes the profits, he will be treated as guardian. His character is fiduciary; the statute of limitations is inapplicable; and lapse of time will not bar account. Goodhue *v.* Barnwell, Rice, Equity, 239.

The ruling of the Judge below was evidently in reference to a single question, in which he clearly was in error. But, independently of his decision, it may become the plaintiffs to satisfy this court that, if he had all these questions before him, the de-

·fendants, in any point of view, would have been entitled to a decree in their favor.

Therefore, it becomes the complainants to show that they were entitled to a decree in their favor, upon the entire merits of their case.

The counsel for the appellees made the following points :

First point omitted.

II. The court was right in rejecting the copy of the marriage contract.

1. The affidavits of the complainants were insufficient to prove the loss of the original, which they had never seen, and which had never been seen by any witness in the cause.

The foundation that is the existence of an original, was not laid, unless it is shown by the copy.

This distinguishes it from the case of Winn *v.* Patterson, (9 Pet. 663,) and all the other cases; 5 Pet. 233, et al.

2. If this foundation was laid, they do not show a search for the original such as is required by the court.

They state where they have searched; but Yancey removed from South Carolina to Alabama, carrying the personal property with him. His right, according to the theory of complainants, depended upon this agreement. He would have carried it with him. It would have been among his papers. There was no search there. See the cases cited on appellant's. brief.

3. The copy from the records in South Carolina, cannot rest on the principle of an ancient deed. The possession and acts of Yancey, as represented by complainants, were inconsistent with any limitation on his title, and therefore with this deed. Nor does the rule apply to copies, unless some other proof of the existence of the deed is given. There must be proof *aliunde* that there was an original. Winn *v.* Patterson, 9 Pet. 675–6, and the cases cited by appellant.

4. The affidavit of Lykes and wife was properly rejected by the court; and, in order to lay the foundation for the secondary proof, all the complainants should have purged themselves from any concealment or laches.

III. The copies could only be admitted on the ground of their having been duly and lawfully recorded in South Carolina.

1. The title is set up in a married woman residing in Alabama, in personal property, openly under the control of her husband, which title depends on a marriage contract made in South Carolina. The case of Lee *v.* The Bank of the United States, (13 Pet.) shows that such a title may be supported, not-

22 *

withstanding there is no record in Alabama, nor any badge or token to distinguish it from the general property of the husband.

If the action had been in the State Court, the law of South Carolina must have been proved, as any other fact in the cause. But this court has said, in Leland *v.* Wilkinson, (6 Pet.) and Owings *v.* Hull, (9 Pet.) that the general laws of the several States will be judicially noticed in the courts of the United States.

We are, then, to inquire what the law of South Carolina was in 1816? It required the record to be made within three months after the date of the deed, and after the execution had been proved according to law, in the office of the Secretary of State only.

This disposes of the copy from the Richland district.

2. No statute of South Carolina is produced, showing how the deed was to be proved. But, admitting that this deed was executed and proved according to law, the proof of the recording does not sustain the claim.

The law of South Carolina will be found in James's Dig. 275–6; 2 Brev. Dig. 45–6; 6 Stat. at Large, App. 636–7; and 5 Stat. at Large, 203.

That law required the record to be made within three months, or the deed was void.

One of these copies appears to have been recorded on the 31st of July, 1816, in the Richland office; the other, between the 30th of July and the 14th of November, in the Secretary's office. The presumption, then, is, that the former was first recorded; for it could hardly be that it was recorded in this last office on the 30th, and in the former on the 31st.

Again; the law authorizing the record in the Register's office, was not passed until 1823. How, then, came this deed to be recorded there seven years in anticipation of such a law? Is it not evident that the parties placed it there first, by mistake, and, discovering their error, afterwards had it placed in the Secretary's office? Then, when was it put there? They must show it was within three months after its date. They have failed to do so.

So that whether the affidavits were, or not, sufficent to admit the secondary proof, the secondary proof itself is wholly insufficient, by reason of the failure of complainants to show the record under the statute.

IV. The defendants have pleaded the statute of limitations of six years.

It would be a complete bar, in any action at law. Aik. Dig. tit. Limitation, p. 270, 271.

The disabilities are coverture, infancy, *non compos*, and absence of defendant beyond seas.

De Lane et al. v. Moore et al.

In this case, the slave was sold in 1821; the coverture terminated in 1823; the husband survived to 1834, with the right of possession and enjoyment only. In 1834, complainants' right was complete, if they had any. The youngest must have been of full age in, or before, the year 1837. They are all children of the widow DeLane, before her marriage with Yancey, in 1816. A suit in Equity against these defendants was pending in 1843, for this very property, and dismissed for want of prosecution. It was as if it had never existed. In 1847, when this suit began, more than twice the period of limitation had elapsed since the right, if any, accrued.

Courts of Equity will not encourage such demands. There must be some diligence, some activity, some movement, by the party. Piatt v. Vattier, 9 Pet. 405; McKnight v. Taylor, 1 How. 161.

V. Such activity was peculiarly necessary in this case. It is a suit against executors, bound to close their office with reasonable despatch. A suit pending against them in 1843, had been dismissed. They had gone on to settle their trust; the debts had been paid, and the assets distributed, when this suit was brought, and courts of equity will protect them. The claim should have been presented within eighteen months. Aik. Dig.; Clay's Dig. 195, § 17.

VI. Finally, the presumptions of fact are all against the claim set up.

The marriage contract authorizes a sale by the husband, with the consent of the wife. They are residing together, apparently in not a very prosperous condition, and both purchase, for their own support and the support of their family, (of these very complainants,) the goods of the defendants' testator. They are unable to pay for them, and one or both of them sell the slave to him for these very things. Honesty and fair dealing required that the wife should out of her means aid the husband in supporting the children of her prior marriage, and this court will presume that she did what common honesty required of her, and that she did unite in the sale. At all events, it was a sale and delivery of possession made in her lifetime for her benefit, and this court could compel her to ratify it now if she had not done so before.

This contract was made in South Carolina in 1816; the parties removed to Alabama before 1820. It is to be interpreted by the laws then in force in South Carolina.

In 1811, (Ewing v. Smith, 3 Dess. 417, 455, 457, 462, 463,) the Court of Appeals of that State declared the common law of England was not applicable to cases of married women having separate estates in that State. This was followed by Carter v. Eveleigh, 4 Dess. 19, and James v. Maysant, Ib. 591.

De Lane et al. v. Moore et al.

From these cases it appears—1st. That a married woman, having a separate estate, can only change, encumber, or dispose of it, strictly according to the provisions of the settlement. 2d. That an estate limited to the joint use of husband and wife during coverture, with power to her to dispose of it by deed or will, and to go to her sole and absolute use in case of her surviving him, is a separate estate. 3d. The separate estate will be liable for debts contracted for the purposes for which it was created.

In this case the conditions necessary to raise a separate estate to her out of the joint estate, do not exist.

1. There is no power of disposition given to her, but it is given to the husband only with her consent.

2. There is no sole and absolute use reserved to her; but the right of survivorship, without any power of disposal, is mutual.

3. The debt in this case was contracted for the purposes of the trust, and on the credit of the trust estate.

The cases of Cooke v. Kennedy and Smith, (12 Ala. 42); Bender v. Reynolds, (15 Ala. 446,) are directly in point, that such an estate, with the property in the possession of the husband, is subject to the husband's debts. See also Moss v. McCall, 12 Ala. 630.

Here acquiescence may be inferred. Square v. Dean, 4 Bro. C. C. 326; Beresford v. Ar. Bis. Armagh, 13 Sim. 643.

Mr. Justice DANIEL delivered the opinion of the court.

The appellants, in the year 1847, filed their bill in the court aforesaid against the appellees, seeking of them a discovery as to certain slaves charged to have come to the possession of their testator, and also an account and a recovery of the value, increase, hires, and profits of those slaves, and claiming by name a negro woman named Linda or Linder, together with her children.

The bill charges that in the year 1816, Mrs. Ann Wood De Lane, a widow lady residing in the State of South Carolina, and possessed of valuable real estate, and of sundry slaves, being about to intermarry with one John Yancey, an antenuptial contract was entered into and executed between these parties. The stipulations in this contract, which is made an exhibit with the bill, are to the following effect: That "all the estate of the said Ann, real and personal, should be and remain for the joint use, support, and enjoyment of the said John and Ann during their joint lives, and to the survivor of them during his or her life; that the same should be free from any debts, dues, demands, or contracts of said Yancey, unless it should be under the following restrictions: That the said John Yancey

De Lane et al. v. Moore et al.

should not have the right to dispose of any portion of the estate or property, real or personal, unless the said Ann should consent thereto. That the said John should have the right to dispose of the property upon his obtaining such consent. That the said Ann should have the right of granting or withholding her consent without resorting to the aid of a court of equity, or to the intervention of a trustee. That all transfers by the said John of any portion of the property with the consent of the said Ann, should be valid, whether made for his separate use and benefit, or for the joint use of himself and wife ; and that the said John should not be compellable to settle any equivalent for property so transferred, unless there should be a stipulation between the parties to that effect. That all of the estate, real or personal, which should remain undisposed of during the joint lives of the parties, should be for the use and benefit of the survivor; and at his or her death should be equally divided amongst all the children of the said Ann, both of this and of the former marriage. That none of the aforesaid estate, real or personal, should be liable for any debts, judgments, or executions, that might be in existence at the date of the contract, or at any time thereafter against the said John, unless by mutual consent of the parties. The bill further charges that the marriage having taken place between the said Ann Wood De Lane and John Yancey, they removed to the State of Alabama, where the said Ann having died, the said Yancey, who survived her, sold to James L. Goree, deceased, either during the lifetime or after the death of the said Ann, but without her consent, and in violation of the antenuptial agreement, several of the slaves mentioned in that agreement. That the said Philip H. De Lane, Martha Chiles, and Grace Lykes, who are the children of Ann W. De Lane, by her first marriage, and her only heirs, were, at the date of the sale aforesaid by Yancey, infants of tender years.

The bill makes no persons defendants, and seeks relief against none others, except the said Andrew B. Moore, and James L. Goree, the executors of James L. Goree, deceased.

The respondents deny all personal knowledge of a purchase of slaves by their testator, of Yancey, but state that they have been informed, and believe, that the decedent did, in his lifetime, and in the lifetime of Ann W. Yancey, obtain from the said John Yancey, in the year 1822, a negro woman slave, named Lindy, and her child Becky, in payment of a store account contracted with the decedent, whilst a merchant in Alabama, by said John and Ann Yancey, for sugar, coffee, pork, butter, clothing, and other necessaries for the support of the said John and Ann, and of the complainants, the children of the said Ann,

De Lane et al. *v.* Moore et al.

and of the slaves conveyed in the marriage settlement. The respondents deny that any slave mentioned in that agreement, except the woman Lindy, ever came to the possession of their testator, and after naming the offspring of Lindy, they aver that this female slave and her offspring were never held by the respondents in any other right than as the executors of James L. Goree, deceased; that long before the institution of this suit, the respondents, as such executors, had delivered over to the distributees of their testator, all the slaves held by them, had settled their account as executors, and received a discharge, viz., on the 2d day of January, 1846. Having made the above statements in answer to interrogatories put by the bill, the respondents propound these separate averments, and claim to be allowed the benefit of them as if specially pleaded.

1. That their testator was a *bonâ fide* purchaser of the slave Lindy for valuable consideration, without notice of the alleged marriage settlement.

2. That more than six years had elapsed between the death of Yancey, who survived his wife, and the commencement of this suit, and therefore the suit is barred by the statute of limitations.

3. That the said marriage settlement was made in the State of South Carolina, and was not recorded according to the laws of that State, and is therefore void, both as to the respondents and to their testator, who was a *bonâ fide* purchaser without notice.

4. That if the marriage settlement had been properly recorded, or was otherwise valid the sale of the slave Lindy was made with the assent of the said Ann Yancey.

5. That the respondents received the said slaves as the executors of the last will and testament of decedent, as a part of his estate, and had, before this suit was commenced, disposed of them according to the provisions of said will, by distribution and delivery to the legatees of said estate, and that long before the commencement of this suit, had made a final settlement of said estate, and had been discharged from said executorship.

To the answer of the respondents, the complainants filed a general replication, and upon the pleadings and proofs in the cause, the District Court, on the 7th of December, 1849, pronounced a decree, dismissing the bill of the complainants, with costs. The correctness of that decree we will proceed to consider.

The first question which presents itself, in the natural order of investigation of the proceedings of the District Court, is that which was raised upon the admissibility in evidence, of an authenticated copy of the antenuptial contract, upon the suffi-

ciency of the cause ; assigned for the non-production of the original. The cause so assigned, was this. The three children of Mrs. De Lane, with the husbands of the two daughters, depose that they never possessed, nor ever saw the original contract; that they have made diligent inquiry for it, but have been unable to learn either its present existence, or place of existence — and believe that it has been lost or destroyed. And the son, Philip De Lane, states farther, that he had made inquiry for it, first of John Partridge, his guardian, who informed him that he had never been in possession of it, and did not know where it was; that deponent had also made inquiry for it at the Office of Mesne Conveyances, and at the Office of the Secretary of State, of South Carolina, but upon search and inquiry it could not be found at either of those places; and he believes that this instrument was either destroyed by said Yancey, or by fire when the court house in Monroe county, in Alabama, was burned in 1833 — that the subscribing witnesses to the agreement, he believes, after diligent inquiry, are dead. That Yancey died in 1836, in Mississippi, utterly insolvent, and no person ever administered on his estate. In disregard of these affidavits, the District Court refused to consider the copy of the antenuptial contract as legal or admissible in the absence of the original, and in this refusal, we think that court has erred. Upon the most obvious principles of reason and justice, we think, that the complainants could not have laid a stronger foundation for the introduction of the secondary proof. The custody of the original document, or the duty of preserving it, could in no view be brought home to them. And its absence, therefore, over which they could have had no control, and produced by no default of theirs, should not have deprived them of the effect of that document to avail for whatever it might be worth. This view of the question before us, is strengthened by the obvious considerations, that no suspicion justly attaches to the complainants from the non-production of the original agreement, and that its exhibition was calculated rather to corroborate, than to weaken their claims. The instances in which secondary evidence is to be admitted, and the requisites demanded by the courts to warrant its introduction, are treated of in the elementary works on evidence, as for instance, in 2 Saunders on Pleading and Evidence, 833, et seq. But in a decision of this court, this subject has been dealt with in a manner so strikingly apposite to the question now before us, as to warrant particular notice thereof, as being in all respects, decisive of that question. We allude to the decision of Tayloe v. Riggs, reported in 1 Peters, 591. That case presented by no means so strong a a claim for the introduction of secondary evidence as does the

De Lane et al. *v.* Moore et al.

one now under consideration, for that was an application for leave to substitute parol for written evidence, and not for the substitution of an authenticated copy of a written and recorded document in lieu of the original. In Tayloe *v.* Riggs, the Chief Justice lays down the law as follows :

" The rule of law is, that the best evidence must be given of which the nature of the thing is capable ; that is, that no evidence shall be received which presupposes greater evidence behind in the party's possession or power. The withholding of that better evidence raises a presumption, that if produced, it might not operate in his favor. For this reason, a party who is in possession of an original paper, or who has it in his power, is not permitted to give a copy in evidence, or to prove its contents. When, therefore, the plaintiff below offered to prove the contents of the written contract on which this suit was instituted, the defendant might very properly require the contract itself. It was itself superior evidence of its contents to any thing depending on the memory of a witness. It was once in his possession, and the presumption was that it was still so. It was necessary to do away this presumption, or the secondary evidence must be excluded. How is it to be done away ? If the loss or destruction of the paper can be proved by a disinterested witness, the difficulty is at once removed. But papers of this description, generally remain in possession of the party himself, and their loss can, in most instances, be known only to himself. If his own affidavit cannot be received, the loss of a written contract, the contents of which are well known to others, or a copy of which can be proved, would amount to a complete loss of his rights, at least in a court of law. The objection to receiving the affidavit of the party is, that no man can be a witness in his own cause. This is undoubtedly a sound rule, which ought never to be violated. But many collateral questions arise in the progress of a cause, to which the rule does no apply. Questions which do not involve the matter in controversy, but matters auxiliary to the trial, which facilitate the preparation for it, often depend on the oath of the party. An affidavit of the materiality of a witness, for the purpose of obtaining a continuance, or a commission to take a deposition, or an affidavit of his inability to attend, is usually made by the party, and received without objection. So affidavits to support a motion for a new trial are often received. These cases, and others of the same character, which might be adduced, show that in many incidental questions that are addressed to the court, and which do not affect the question to be tried by the jury, the affidavit of the party is received. The testimony which establishes the loss of the paper is addressed to the court,

and does not relate to the contents of the paper. It is a fact which may be important as letting the party in to prove the justice of the cause, but does not of itself prove any thing in the cause. As this fact is generally known only to the party himself, there would seem to be a necessity for receiving his affidavit in support of it."

The law, as thus clearly declared by this court in Tayloe *v.* Riggs, is in strictest accordance with the rule prevailing in the Supreme Court of the State within which the case before us was decided. Thus, in the case of Sturdevant *v.* Gaines, (reported in the 5th vol. Alabama Reports, p. 435,) that court thus announces the rule by which they are governed with respect to the introduction of secondary evidence: " In the recent case of Jones *v.* Scott, (2 Alabama R. 61,) it is stated, that no fixed rule can be laid down as applicable to this class of cases; that, in general, search must be made where the lost paper was last known to be. These remarks are quite applicable to this case. Search was made where the paper was last known to be only three days before." Again: " We cannot say that half an hour's search in a lawyer's office, was not sufficient to ascertain whether the paper was not where it was left, nor, in the absence of any fact indicating that it might be found elsewhere, can we perceive that there was any necessity to search elsewhere for it. If the admission that the paper, on further search where it was last known to be, or elsewhere, might still be discovered, would preclude the secondary evidence, it would annihilate the rule in all cases where the lost paper was not proved to be destroyed as well as lost, as otherwise there must always be a possibility that it may be found." With regard to the position insisted upon in the answers, that the antenuptial contract was void for the failure to record it within three months from its date, in conformity with the law of South Carolina; that position, however maintainable it might be, so far as the instrument was designed to operate by mere legal or constructive effect on creditors and purchasers, becoming such before it was recorded, or, in the event of its never being recorded, cannot be supported to the extent, that by the failure to record it within the time prescribed by the statute, the deed would thereby be void to all intents and purposes. Such a deed would, from its execution, be binding at common law *inter partes,* though never recorded; and if, after expiration of the time prescribed by statute, it should be reacknowledged and then recorded, either upon such reacknowledgment, or upon proof of witnesses, it would, from the period of that reacknowledgment and admission to record, be restored to its full effect of notice, which would, by construction, have followed from its being recorded originally within the time pre-

scribed by law. These conclusions are sustained by numerous decisions. We refer, in support of them, to the cases of Turner v. Stip, 1 Wash. 319; Currie v. Donald, 2 Wash. 58; Eppes v. Randolph, 2 Call, 125; Guerrant v. Anderson, 4 Ran. 208; Roanes v. Archer, 4 Leigh, 550; Woods v. Owings & Smith, 1 Cranch, 239; Lessee of Sicard v. Davis, 6 Peters, 124.

The antenuptial agreement between Ann Wood De Lane and John Yancey, is proved to have been executed on the 20th day of May, 1816; if it was admitted to record at any time before the 20th of August, in the same year, it operated as notice to all creditors and purchasers becoming such subsequently to the execution of that agreement; if it was not recorded until the 14th of November, in the year 1816, it could by construction operate as notice from the latter period only, but as between the parties, and with regard to subsequent creditors and purchasers with notice, it operated from the period of its execution. The sole purpose of recording the deed, is, that those who might deal with the parties thereto, or with the subjects it comprised, should have knowledge of the true condition of both, and if such knowledge is presumed, nay, established by legal inference from the fact that the deed has been recorded, *a fortiori*, it must be established by actual notice.

It has been made a ground of defence, in the answers in the court below, and it has also been insisted upon in argument here, that admitting the antenuptial contract to have been recorded in the State of South Carolina, and, in consequence thereof, to have been so operative as to affect with notice creditors and purchasers within that State, yet, that upon the removal of the parties, carrying with them the property into another State or jurisdiction, the influence of the contract, for the protection of the property, would be wholly destroyed, and the subject attempted to be secured, would be open to claims by creditors or purchasers subsequently coming into existence. The position here advanced is not now assumed for the first time in argument in this court. It has, upon a former occasion, been pressed upon its attention, and has been looked into with care, and unless it be the intention of the court to retrace the course heretofore adopted, this may be now, as it formerly was, called an adjudged question. The case of the United States Bank v. Lee et al., (reported in the 13th of Peters, p. 107,) brought directly up for the examination of this court, the effect of a judgment and execution, obtained by a subsequent creditor in the District of Columbia, upon property found within that district, but which had been settled upon the wife of a debtor, by a deed executed and recorded in Virginia, according to the laws of that State, the husband and wife being, at the time of

making the instrument, inhabitants of the State of Virginia. The question was, by Mr. Justice Catron, who delivered the opinion of the court, elaborately investigated, and the cases from the different States, founded upon their registry acts, carefully collected. The cases of Smith v. Bruce's Administrator, from 2d of Harris & Johnson, and of Crenshaw v. Anthony, from Martin & Yerger's Reports, p. 110, cited by the learned Judge, fully sustain his reasoning upon the point. This court come unhesitatingly and clearly to the conclusion, that the deed of settlement, executed and recorded in favor of Mrs. Lee, in conformity with the laws of Virginia, protected her rights in the subject settled, against the judgment of the subsequent creditor, in the District of Columbia. We should not be disposed to disturb the doctrine laid down in the case of the Bank of the United States v. Lee, and in the decisions of the State courts of Maryland and Tennessee, above mentioned, if the rights of the parties turned upon the operation of the contract as constituting notice ; or upon the proof of knowledge on the part of Goree, the purchaser from Yancey, of the existence of the marriage contract. But we think that the rights of the parties to this controversy should not be made to depend upon any such incident as the existence of notice of the contract, either actual or constructive.

It has been premised, in the statement of the pleadings in this case, that the only defendants in the court below, were the executors of James L. Goree, deceased, called upon in their representative character, and in no other. The marriage contract between Ann W. De Lane and John Yancey, was executed in 1816. It is proved that Yancey died in 1833, or 1834. The complainants are the children of Mrs. Yancey, by her first marriage ; so that, at the time of the death of Yancey, the youngest of those children, if born immediately preceding the second marriage, could not have been younger than seventeen years ; the elder children were then probably nearly or fully at majority. After the death of Yancey, the record discloses no claim on the part of the complainants, nor any effort by them to recover the property settled by the contract, earlier than 1842, eight or nine years after Yancey's death ; at which last period, it is said, there was a suit pending in one of the State courts, against the testator of the appellees, but which suit, after being revived against the appellees, subsequently to the death of their testator, was, in the year 1843, dismissed for the want of prosecution. The bill in this suit was filed in January, 1847, at an interval of thirty-one years after the execution of the marriage agreement, and of fourteen years after the death of Yancey ; from which last event, the complainants had an undoubted and unobstructed

power to seek their rights under that contract, whatever they were.

If mere tardiness in asserting their pretensions, were all that could be imputed to the appellants, this, of itself, would place them in a position which could not commend them the countenance of courts of justice; but, this delay is by no means the only or the least imputation, resting upon the course of the appellants; for we see that, after calling upon the appellees for satisfaction of their demand, the appellants abandoned that demand, proclaiming thereby to the representatives of Goree (if indeed they were then in possession of the subject,) permission to apply it in conformity with the will of their testator. The appellants, it is not pretended, ever held or claimed the subject in dispute, except in their representative capacity, and in trust for the creditors and legatees of their testator. In the interval between the abandonment of their first and the institution of their second demand by the complainants, those executors have, in fulfilment of their trust, handed over the subject to those for whom they held it under the will; have accounted with the authorities to whom they were responsible, and have received from those authorities a full acquittance. Under these circumstances, to hold them liable to the demands of the appellants, would in effect be to render penal the regular discharge of their duty.

This aspect of the cause we regard as fully warranting the decree of the District Court, dismissing the bill of the complainants — that decree is therefore affirmed.

## Order.

This cause came on to be heard on the transcript of the record from the District Court of the United States for the Middle District of Alabama, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed by this court, that the decree of the said District Court in this cause be, and the same is hereby, affirmed with costs.