IN RE ESTATE OF A. B. DEVOE, Deceased, CARRIE E. DEVOE, Appellant, AND WILLIAM DEVOE v. LUCRETIA E. ATKINSON, CARRIE E. DEVOE *et al.*, CARRIE E. DEVOE, Appellant.

**Rescission by Destruction of Contract: EVIDENCE.** In a widow's action for her interest in her husband's estate, it was proved that prior to the marriage an antenuptial contract was duly executed. No such contract was found complete after the husband's death, but a paper was discovered containing most of its provisions, from which the final part containing the signatures was missing, and which contained a waiver by the wife of all interest in the husband's estate except as provided in the contract. The heirs gave evidence tending to show that another complete contract had been executed, and was in existence shortly prior to the husband's death. The widow's evidence tended to show that only one contract had been executed, and she introduced the paper discovered, as evidence of rescission by destruction. The evidence of the only witness for the heirs who had read any antenuptial contract, as to the contents of the paper he saw, was not materially inconsistent with the terms of the paper shown. *Held*, that the evidence sustained a finding that the paper shown was part of the only contract made.

SAME.  In an action by the widow for her interest in her husband's estate, the heirs pleaded a waiver by antenuptial agreement, which the widow claimed had been rescinded and destroyed during the marriage.  At the time of the execution of the contract, the husband, who was inclined to be secretive as to his business affairs, requested the witnesses to the execution to say nothing about it, and was much annoyed when the fact leaked out later.  The contract was not recorded, and the wife joined in the husband's deeds during his life.  The evidence of destruction was confined to a production of part of the contract with the signatures missing, and the evidence of G. that the husband, a few months before his death, told her that he had destroyed the contract, giving as his reasons unsatisfactory relations with his children, for whose benefit the contract had been made.  G.'s evidence was corroborated by that of her young daughter and that of the widow.  G. was not shown to have been an intimate friend to whom such a disclosure would naturally have been made, and the evidence as to unpleasant relations with his children was not satisfactory.  *Held*, that the evidence sustained a finding that there had been no rescission, since it was not necessary or usual to record such contracts, and the lack of such record was the reason of the wife's joining in deeds, and the burden of proving rescission by destruction by satisfactory evidence, assuming there may be recission by destruction or parol, lay on the widow, who failed to produce it.

CONTENTS OF CONTRACT:  *Evidence.*  A husband and wife executed an antenuptial agreement, but after the husband's death all that could be found was the first four pages, the signatures being missing, which part contained a full waiver by the wife of all interest in the husband's estate, including the homestead, for a consideration which seemed full and complete.  There was some evidence that the missing part contained some provision for a permanent home for the widow, but no evidence was given that the missing part contained any provision affecting her interest in the estate.  *Held*, in an action by the widow for her interest in the estate, that the evidence sustained a finding that the part produced contained substantially all the provisions of such contract as to such interest.

CONTRACT WITH SIGNATURE TORN OFF:  *Statute of frauds.*  Where a husband and wife were proved to have executed an antenuptial contract, and after the death of the husband all that could be found was the first four pages, the signatures being missing, the statute of frauds, requiring such contracts to be in writing,

and signed by the parties, did not render such part inadmissible in evidence to prove the contents of the contract.

**Antenuptial Contract:** EVIDENCE TO SUSTAIN. A man of 73 and a woman of 27 entered into an antenuptial contract, by which the wife waived all interest in the real and personal estate of her husband, which was stated to be $50,000, more or less, in consideration of the receipt of $300 in cash and $200 in furniture at the husband's death and $300 a year during widowhood. The wife had been a resident of the neighborhood for a long time and a domestic in her husband's family for several years prior to the marriage, and had always been very poor. After the marriage the wife frequently expressed her satisfaction with the arrangement by which the property was to go to her husband's children, and while she testified that she never saw the contract before signing, yet she did not testify that she did not know her husband's financial standing. There was no evidence showing accurately what the husband was worth when he married, but five or six years later his estate fairly amounted to $120,000. *Held*, that the contract should be sustained, since the evidence warranted a finding that no fraud or concealment had been practiced, and, in the absence of fraud or unfairness, the parties will be left where they placed themselves.

*Appeal from Union District Court.*—HON. H. M. TOWNER, Judge.

SATURDAY, JANUARY 19, 1901.

THE appellant, Carrie E. Devoe, is the widow of A. B. Devoe, who died intestate February 26, 1898. The appellees are the children of A. B. Devoe by former marriages. In August, 1898, William E. Devoe, one of the appellees herein, brought an action for the partition of real estate of which A. B. Devoe, his father, died seised, alleging that the appellant, Carrie E. Devoe, had no interest therein except such as was provided by an antenuptial contract in writing entered into by her before her marriage to his father. In March, 1899, Carrie E. Devoe applied to the probate court to have her statutory interest in the estate of her deceased husband set apart to her. This was contested on

the ground that she had entered into an antenuptial agreement with her husband, in which she waived her statutory interest in his estate. To the claims of the appellees in both cases, based on the antenuptial contract, she pleaded fraud in procuring the same; that it was unreasonable, and contrary to public policy; and that it was expressly revoked and rescinded, and mutually disregarded and abandoned. After the issues were fully joined in both cases, they were tried together. There were judgments for the appellees therein, and Carrie E. Devoe appeals. The cases are submitted together on appeal.—*Affirmed.*

*D. W. Higbee* and *Thos. L. Maxwell* for appellant.

*R. M. La Follette, G. E. Roe,* and *Sullivan & Sullivan* for appellees.

Sherwin, J.—The evidence conclusively shows that an antenuptial contract in writing was entered into by the appellant and A. B. Devoe, her deceased husband, and that it was drawn by his attorney, Mr. J. H. Copenhaffer, and signed by both parties in his presence and in the presence of Mr. A. J. Bivens, and that it was witnessed by both Copenhaffer and Bivens, and duly acknowledged by the latter as a notary public. No entire contract bearing the signatures of the appellant and her husband has been discovered, but a few days after his death the following written instrument was found among his papers in their dwelling house: "Know all men by these presents, that we, A. B. Devoe, party of the first part, of Creston, Union county, Iowa, and Carrie Seely, party of the second part, of the said city of Creston, Union county, Iowa, have, and by these presents do, and in consideration of the sum of one dollar in hand paid by the parties to this contract to each other, and the further consideration of a solemnization of a marriage between these parties, do make and enter into the following contract, to-wit: That whereas, the said parties above set out have mutually agreed this day to be-

come husband and wife according to law, and it is hereby forever agreed by them that each of them is to have the untrammeled and sole control of his or her own property, real and personal, as though no such marriage had taken place; and it is further mutually agreed by said parties that neither is to be holden or made liable for the debts or contracts of the other, but that each may sue and be sued and conduct his or her own business as though such marriage had never taken place. It is also agreed by the parties that, in case of the death of either without issue, his or her property shall descend and belong to the heirs of the deceased only; but, if there be issue resulting from the said marriage, then in that case, such children shall be entitled to a share equal with the other heirs of said A. B. Devoe, share and share alike. And it is further agreed that first party is to maintain said Carrie Seely in a decent and becoming manner, and said provision shall also apply to any children that may be born during said marriage; provided, always, that the said Carrie Seely, party of the second part, shall also in every way demean herself as a dutiful wife. It is also further agreed that, subject to the conditions of this contract, the said A. B. Devoe, party of the first part, shall have the right to convey or dispose of his property, real or personal, without consent or concurrence of second party, and without the signature of second party, the same as if these parties were unmarried. And it is further mutually understood that at the time of making this contract the first party is 73 years of age, and second party is 27 years of age; that first party has 7 children living from former marriages, and is worth perhaps, in real and personal property, the sum of fifty thousand dollars, more or less; and that second party has no children, and is worth no property, either real or personal, nor has he aided in the accumulation of first party's property. And the said second party, in consideration of the aforesaid, hereby agrees that she will claim no right of dower or to one-third of his estate, either real or personal,

or homestead in or to any property which shall belong to the estate of said party of the first part at the time of his decease, provided she shall survive him. And the said party of the first part, in consideration of the premises aforesaid, hereby agrees that, in case that second party shall survive first party, said second party shall be allowed and paid out of the estate of said first party, by his executors or heirs, the interest at 6 per cent. per annum, payable simiannually, upon the sum of five thousand dollars, which shall be paid at and after the decease of first party. First party also agrees the second party shall be paid the further sum of three hundred dollars in cash by the executors or heirs at his decease, and that she shall have the right to select household and kitchen furniture worth not to exceed two hundred dollars at the date of decease. It is further understood and mutually agreed that the interest on the five thousand dollars shall cease at the death of second party, or at such time as she ceases to be the widow of first party, should she survive him; and, in consideration of promises heretofore made, second party accepts the same in full of all claims upon first party's estate of every kind whatever, including dower or homestead or any distributive " The original of this instrument is before us. It consists of four pages of legal cap, written on two unseparated leaves forming one sheet of paper, in the upper corner of which are paper fasteners. The paper itself shows very clearly that it is not complete, but from it and the other evidence, the district court found that it was a part of the antenuptial contract, and that it shows substantially the provisions thereof.

Appellees seem to have been of the opinion on the trial below that another complete antenuptial contract had at some time existed, but was either secreted or destroyed by the appellant, and on this theory they offered evidence tending to show the existence of such contract some time before the death of A. B. Devoe. The

appellant, on the other hand, offered evidence showing that but one such contract had been executed by the parties, and, while not expressly admitting that the fragment above set out is a part thereof, she put in evidence as tending to show that it had been revoked by the destruction of a part thereof, and this position she supported by the testimony of witnesses. We think there can be no serious doubt that this writing is a part of the completed contract made by the parties, and that only one such contract was ever made. All the direct evidence on the subject shows that but one contract was signed by Mr. Devoe and the appellant, and the testimony of the only witness for the appellees who claims to have seen or read an antenuptial agreement between the parties is not so inconsistent with the terms of the one before us as to raise serious doubt as to the identity of the contract.

But the appellant contends that the paper before us is not competent evidence of the agreement, because it is incomplete, and does not bear the signatures of the parties thereto. This is based on the ground that the statute of frauds requires such contracts to be in writing, and that parol evidence can in no case be used to establish their terms. No case is cited by counsel which tends even to support this doctrine. The cases of *Vaughn v. Smith,* 58 Iowa, 553; *Watts v. Cranberry Co.,* 63 Iowa, 730; and *Leather Co. v. Porter,* 94 Iowa, 117; only touch the familiar rule relating to varying or enlarging written contracts by parol. *Elwell v. Walker,* 52 Iowa, 256, mentions the subject, but does not rule thereon. The appellant's contention cannot be sustained by either reason or authority. The only purpose of evidence is to prove facts which shall establish the legal or equitable rights of suitors; and, while it is a general principle, firmly established in the interests of justice, that the best evidence capable of production shall be required, this rule in no way conflicts with the admission of secondary evidence of a lost instrument, even though it be one which the law requires to be in writing; for,

if the instrument were lost without the fault of either party, or if it were wantonly destroyed or secreted by one, it would be a manifest subversion of justice to deny oral proof of its contents after satisfactory proof of its loss or destruction. This view is well sustained by authority. Greenleaf Evidence (13th ed.), sections 84, 86; 13 Am. & Eng. Enc. Law, 1119; *Davis v. Strohm,* 17 Iowa, 421. And see *Postel v. Palmer,* 71 Iowa, 157. And in the following cases parol evidence of the terms of lost antenuptial contracts was ad-, mitted: *McNutt v. McNutt,* 116 Ind. 545 (19 N. E. Rep. 115, 2 L. R. A. 372); *Wilson v. Holt,* 83 Ala. 528 (3 South. Rep. 321, 3 Am. St. Rep. 768); *West v. Walker,* 77 Wis. 557 (46 N. W. Rep. 819); *Spencer v. Boardman,* 118 Ill. 553 (9 N. E. Rep. 330); *Tayloe v. Riggs,* 1 Pet. 591 (7 L. Ed. 275 the ruling in this case was later approved in *De Lane v. Moore,* 14 How. 253 (14 L. Ed. 409). This question is involved in this case only so far as the contents of the missing part of the contract are concerned, for, as we have seen, the making and signing of a contract are conceded by all parties. The instrument before us contains in itself a full and complete waiver of all statutory interest in the real and personal estate of the deceased, including the homestead; and the consideration named therefor seems also to be full and complete. There is evidence tending to show that the missing part of the contract contained some provision for a permanent home for the appellant after her husband's death, but nothing *is* shown which we think indicates any other conditions as to the widow's statutory interest. Hence we think the instrument before us must be held to contain substantially all the conditions affecting her interest in her husband's estate. In fact, she does not herself say anything to the contrary, nor does any witness for her testify to any facts which make this conclusion doubtful.

Appellant urges that the antenuptial contract was rescinded during the lifetime of A. B. Devoe, and in support

thereof calls attention to the proven facts that it was never recorded; that she signed deeds conveying property; that genuine affection existed between the husband and wife, and that Mr. Devoe was "to a great extent alienated from his adult children by reason of their mistreatment of him and appellant;" and finally, because the deceased himself destroyed the contract after his marriage. When the contract was executed, Mr. Devoe expressly requested that the witness Bivens make no disclosure of the fact. Some two or three weeks thereafter Mr. Devoe called upon Mr. Bivens, and complained bitterly because the transaction had in some way became known to the public. It was not necessary to record the contract to give it validity, nor is it usual for the contracting parties in such cases to take the public into their confidence by giving it the details of marriage settlements. So we see no force in this claim of the appellant. That the contract was not recorded is the best reason that can be given for the wife's joining in deeds. The evidence does not support the claim that the children were alienated from their father. And the law presumes the affection between husband and wife to have existed when they entered into the solemn engagement of marriage. Was the contract rescinded? If rescinded at all, it was by its destruction in whole or in part. Aside from the circumstances which the appellant contends support this claim, there is the testimony of Mrs. Graham that Mr. Devoe told her in the fall of 1897 that he had destroyed the contract, and that of her young daughter and Mrs. Devoe, corroborative of the conversation related. On the other hand, the record conclusively shows Mr. Devoe to have been unusually secretive as to his business and domestic affairs and that neither he nor his wife were on terms of unusual intimacy with Mrs. Graham. It is not at all probable that Mr. Devoe would acquaint Mrs. Graham in the casual call at her house with the details of his business and the destruction of the contract, and give, as it is claimed he did, his reasons therefor.

This seems the more improbable because the reasons claimed to have been given find so little support in the record, if, indeed, it may be said they have any. Again, it is almost conclusively shown by the statements of the appellant herself that the contract could not have been destroyed at the time of the conversation which Mrs. Graham recites, and there are many strong facts and circumstances before us supporting the conclusion we reach that the contract was not destroyed by Mr. Devoe. It was an instrument which had been carefully prepared under his direction, evidently after mature deliberation. It was unusually full and complete, and gave substantial reasons for its execution. It was a contract made for the benefit of his sons and daughters by previous marriages, all of whom were at the time adults, and may be presumed to have materially assisted in the accumulation of his property. There is no substantial evidence that his relations with these children had changed after his marriage to the appellant except as to the son William, and as to him it is not at all satisfactory. If this contract might be rescinded by its destruction or by parol,—a question which we do not decide,—the burden rests upon the appellant to prove such rescission by satisfactory evidence, and this she has failed to do.

It is contended that the contract is so unfair and unreasonable, and contains in itself such a gross misrepresentation as to the amount of the decedent's property, that it should not be upheld. An engagement of marriage creates a sacred and confidential relation between the parties, second only to that of marriage itself, and demands the highest degree of morality and fairness on the part of both contracting parties. But, giving to this principle its fullest meaning, it does not follow that courts should make contracts for the parties, nor disregard those which they have themselves solemnly entered into, unless it shall be satisfactorily proven that fraud has been practiced on an innocent party. And in determining this important,

and in this case controlling, question, it is of vital import-
ance to consider the facts and circumstances surrounding
each party at the time of making the contract, for this is one
of the surest means of arriving at the mutual intent.    Be-
fore contracting with the appellant, A. B. Devoe had been
thrice married, and had six living children, all of whom
were married, and living in different localities.    At the
time of making the contract, and at the time of his mar-
riage to the appellant, he was 73 and she was 27 year old.
For three or four years immediately before this time she
had been a domestic in his family, receiving, it is to be pre-
sumed, only a domestic's wages.    In fact, it is clearly shown
that her whole life up to the time of her marriage had been
one of unremitted toil, and to some extent, at least, of priva-
tion.    Nothing is shown as to her father, but her mother is
shown to have been, at times, at least, supported by charity.
Appellant had been a residen of Creston for some time be-
fore engaging in the service of A. B. Devoe.    Just how long
does not appear, but her residence there and in his family was
sufficiently long to acquaint her in a general way, at least,
with the fact that he was a rich man.    The contract gives
her an annual income from $5,000, in addition to the sum
of $300 in cash and $200 in value of the household and
kitchen furniture.    In view of the statement in the contract
that he was worth $50,000, more or less, it is very clear that
appellant was entirely satisfied to relinquish her possible in-
is far from the assertion of no knowledge as to his financial
and marriage would bring to her.    Nor does she testify that
she did not know at the time of signing the contract the exact
amount of his estate.    She does say that she had seen the con-
tract, and did not know its contents, before signing; but this
is far from the assertion of no knowledge as to his financial
condition.    The law will not presume fraud and misrepre-
sentation.    On the contrary, the presumption as to dealings
between parties sustaining the close relations of fiancee is
that of utmost good faith, unless something appears in the

contract itself rebutting such conclusion. We cannot pre--
sume, then, that she did not have knowledge on this matter-
aside from that contained in the instrument, and her silence
on the subject may well raise a strong presumption that she·
did. Again, it is not shown certainly what the estate of the
deceased was at the time the contract was made. The evi--
dence fairly shows, .however, that it would approximate·
$120,000 about 5½ years thereafter. There was about $50,-
000 of personalty when invoiced, and real estate consisting-
of business houses and other property in Creston and else--
where which the deceased owned at the time of his marriage
to the appellant. It will also be noticed that the contract·
does not fix the value absolutely; it says $50,000 more or less,.
indicating that neither party thought it necessary to give
the exact figures in the contract. As we read the record, the·
conclusion forces itself upon us that the appellant had full
information as to the estate of her prospective husband, and
that she willingly entered into the contract with the thought
that she was well and suitably provided for; and this conclu--
sion is in perfect harmony with her own statements to differ-
ent parties during her husband's life. She knew that he·
wanted his estate to go to the children, and frequently ex-
pressed her satisfaction with that arrangement, and with the·
provisions that had been agreed upon for herself. No fraud
or concealment appears, and, if it be conceded that this case
falls within the rule announced in *Fisher v. Koontz,* 110
Iowa, 498, that the burden in cast upon the appellee to show
that the contract was fairly procured, we think the burden
has been successfully borne, and that the contract should be·
sustained. That the parties should be left where they placed
themselves, in the absence of fraud or unfair dealing, is well¯
settled, not only in this state, but elsewhere. *Peet v. Peet,.*
81 Iowa, 172; *Mahaffy v. Mahaffy,* 63 Iowa, 55; *Ditson v.
Ditson,* 85 Iowa, 276; *Fisher v. Koontz,* 110 Iowa, 498;
*Smith's Appeal,* 115 Pa. St. 319 (8 Atl. Rep. 582);·
*Thompson v. Osborn,* 111 Mich. 470 (69 N. W. Rep. 730);·

*McNutt v. McNutt,* 116 Ind. 545 (19 N. E. Rep. 115, 2 L.
R. A. 372) ; *In re Kesler's Estate,* 143 Pa. St. 386 (22 Atl.
Rep. 893, 24 Am. St. Rep. 557, 13 L. R. A. 581; *West v.
Walker,* 77 Wis. 557 (48 N. W. Rep. 819) ; *Naill v. Maurer*
25 Md. 532 ; *Forwood v. Forwood,* 86 Ky. 114 (5 S. W.
Rep. 361 ; *Stilley v. Folger,* 14 Ohio, 610. As our views
require an affirmance of the two cases on their merits, we do
not further notice the motion to dismiss the appeals. The
cases are both AFFIRMED.