2009 UT App 233

**James Lewis KIMBALL, Petitioner, Appellant, and Cross-appellee,**

v.

**Merae KIMBALL, Respondent, Appellee, and Cross-appellant.**

**Merae Kimball, Plaintiff and Appellee,**

v.

**James Lewis Kimball, Defendant and Appellant.**

No. 20060263–CA.

Court of Appeals of Utah.

Aug. 27, 2009.

Wendy J. Lems, Midvale, for Appellant.

Thomas R. Blonquist, Salt Lake City, for Appellee.

Before Judges THORNE, ORME, and BILLINGS.[1]

## OPINION

ORME, Judge:

### INTRODUCTION

¶ 1 This consolidated appeal arises from a divorce action filed by James Lewis Kimball (Husband) against Merae Kimball (Wife), and a fraud and unjust enrichment action filed by Wife against Husband. The key issues, among the many others raised, are whether Wife's stock proceeds that were originally deposited into joint accounts but later transferred to Wife's individual account retained their nature as separate property; whether prejudgment interest was appropriate on the unjust enrichment award, which award was calculated based on canceled checks showing both a date and the amount; and whether the trial court erred in refusing to award attorney fees to Husband when it reasoned that Husband had no financial need because his family had already paid his attorney fees. Except for the attorney fees determination, we affirm the trial courts' various rulings in the two actions.

### BACKGROUND

¶ 2 On March 18, 2002, after being married to Wife for a little over fifteen years, Husband sought a divorce. The August 7, 2003 decree of divorce dissolved the parties' marriage. When the matter ultimately went to trial, the main issues remaining involved whether money obtained after the sale of Wife's stock was separate property and whether Husband was entitled to an award of attorney fees. The trial court determined both matters in Wife's favor. Wife filed a fraud and unjust enrichment action against Husband on February 7, 2003, claiming that Husband altered the amounts of, and forged Wife's name on, certain checks, and that Husband was unjustly enriched thereby.[2] At trial, the court dismissed the fraud claim against Husband but ruled in Wife's favor on the unjust enrichment claim. Both parties appeal from the trial court's final rulings in the divorce and unjust enrichment actions. The record is extensive. We discuss the relevant factual findings from both proceedings doing our best—believe it or not—to be as succinct as possible.

### I. Wife's Stock

#### A. Wife's Receipt of the Stock

¶ 3 Wife's father formed Utah Bearing and Fabrication, Inc. (the Corporation). After her father's death in 1993, Wife, her mother, and her siblings reached an arrangement whereby Wife received 1005 shares of the Corporation's stock, which the Corporation repurchased for $2,500,000 in 1995. Under the terms of the sale, "[Wife] received a down payment of $500,000 during March of 1995, and a ten year trust deed note for $2,000,000 payable at the rate of $25,335.15 per month." Wife received the scheduled monthly payments through June 1997. During July 1997, she received the remaining balance owed, $1,697,039.70. Mindful of the family origins of the stock proceeds, the trial court characterized the money Wife received

---

1. The Honorable Judith M. Billings, Senior Judge, sat by special assignment pursuant to Utah Code section 78A–3–102 (2008) and rule 11–201(6) of the Utah Code of Judicial Administration.

2. This action was also filed against Wife's bank, with claims of breach of contract and improper payment on certain checks. Wife has not appealed the trial court's rulings on those issues.

from the stock transaction as an "inheritance."

## B. Separate Property that Was Not Commingled

¶ 4 Even though Wife used some of the stock proceeds for family purchases, and even though some of the stock proceeds at times were deposited into the parties' joint accounts, the trial court determined that Wife's actions as a whole manifested an intent to keep her stock proceeds as separate property. Wife also opened and used an individual account with Fidelity Investments to hold some of the stock proceeds. Wife "filed an individual tax return for 1998 and reported all earnings … from the Fidelity Account." While during "1996 and 1997[ ] the trust deed monthly payment[s were] deposited in the parties' joint account," Wife's practice was to later transfer some of that money to her individual Fidelity account. The trial court accordingly characterized the joint account as "conduits" not "repositories" for her inheritance. While acknowledging that the money may have had a marital character while in the joint accounts or when used to purchase family items, the trial court determined that when the funds were removed from the joint accounts "they resumed their character as [Wife]'s inherited funds and as such they became the sole and separate property of [Wife]." The trial court viewed the stock proceeds as readily traceable, and further determined that "[t]o the extent … inherited funds were placed in [other] joint accounts," such placement "was done as a convenience and did not have the legal, the factual or the intended legal [e]ffect of either commingling the funds or making them marital property."

¶ 5 Based on these facts, the trial court found that "[e]very act of [Wife] manifested her intent that her inheritance be handled separately" when the "inheritance was placed in a separate account accessible through the writing of checks by [Wife] only"; the "inherited funds were placed in the Fidelity Account that was in [Wife]'s name at all times"; and the parties' "[j]oint accounts were used as conduits for [Wife]'s inherited funds, not as repositories in which they became commingled."

## C. Husband's Claimed Enhancement

¶ 6 When Wife received the first offer for her stock, the amount proposed was $1,700,000. Husband claims he discouraged acceptance of the offer. As mentioned above, Wife ultimately sold her stock for considerably more, namely $2,500,000. The trial court determined that "[Husband] did not enhance [Wife]'s inheritance," finding that "[n]o act of [Husband] increased the [number] of shares of the Family Business that [Wife] received, caused [Wife]'s holdings in the Family Business to have greater value or resulted in [Wife] receiving a greater price for her holdings." It reasoned that "[Husband's] efforts … were to at best encourage seeking brief replacement stock; but there is no evidence that his efforts directly resulted in a greater price being paid, or that the stock had a greater value because of his efforts."

## II. Husband's Dishonest and Questionable Actions

¶ 7 In the divorce proceeding, the trial court found that "[Husband], without authorization, forged [Wife]'s name on Fidelity Account checks totaling $142,467 made payable to himself or [to] 'cash' that he converted to cash." While claiming that he used the money "for family purposes," Husband did not disclose the transactions to Wife at the time, did not at any time tell Wife how he used the funds, and did not provide an accounting of how the funds were spent. The trial court found that "[Husband] did not substantiate his testimony by producing receipts, cancelled checks or other documentation." Husband additionally, "without authorization, altered 6 checks given to him by [Wife] by increasing them from $1,000 to $4,000" and these "alterations reduced [Wife]'s balance in the Fidelity Account [by] $18,000 more than [Wife] intended when she wrote the checks." Husband also did not substantiate his claim that he used the $18,000 for family expenses. In making its ruling on the altered checks, however, the trial court found Husband's testimony credible and determined that "[i]t

[wa]s reasonable that the money so obtained by [Husband] was used for family purposes for the benefit of all members of the family, including [Husband]." The trial court further determined that "[Husband] should not be punished in this [divorce] proceeding" for altering or forging the checks at issue.

¶ 8 The trial court additionally found that Husband misrepresented his income to Wife from 1998 to 2001, apparently overstating his productivity as a salesman, and that he also "failed to disclose collection actions and lawsuits filed against him." Further, Husband represented to Wife that a Suburban, a vehicle the parties needed to acquire following an accident, could be purchased entirely with insurance proceeds. Husband then "forged [Wife's] name on a $30,510.95 check drawn on the Fidelity Account and made payable to Larry H. Miller Bountiful to pay for the ... Suburban." This "check was returned by Fidelity Investments marked 'signature does not match.'" Husband later obtained a loan from Zions Bank because the insurance proceeds did not cover the full price of the Suburban, without informing Wife of the loan. Husband also did not tell Wife that he signed her name to checks, drawn on the Fidelity account, to make payments on the Zions loan. Further, during December 2000, Husband represented on a credit application that he made $60,000 per month while his income from 1998 to 2000 was inconsequential, if he earned anything at all. He claims that this was an error on his application, which was supposed to reflect an income of $60,000 per year.[3]

¶ 9 In the unjust enrichment action, the trial court found that Husband denied acting wrongly in altering or signing Wife's name to checks and instead Husband insisted "that he acted consistent with his role as manager of family finances." Husband claimed that he had Wife's "tacit approval" to sign her name to the checks or to alter the amounts of the checks. Husband also continued to state that he used the money for "family purposes." The trial court found that his claim

that the money was used for family purposes was "not corroborated by any credible evidence." It further determined that "[his] actions constitute[d] theft and forgery and he deceived [Wife] into believing he was working" and that "[he] took improper advantage of his managerial position" within the family. Finally, the court determined that none of the proceeds obtained from the altered checks, or checks made payable to Husband or to "Cash" that Husband signed in Wife's name, were used for family purposes.

¶ 10 The trial court further concluded that Husband was unjustly enriched from the money taken to which he was not entitled because he "received a benefit," "had knowledge of the benefit," and "committed misleading acts that would make it inequitable for him to retain the proceeds that he received from altering and forging [Wife]'s checks." The trial court awarded Wife a judgment in the amount of $56,800; "prejudgment interest from the date of each check, if visible," in an amount totaling $34,392.30; and "post-judgment interest at the legal rate."

### III. Wife's Contempt in the Divorce Proceeding

¶ 11 While financial issues were the main event in this complex case, the trial court found that Wife was in violation of the court's orders when she "failed to provide information about the children['s] activities, removed the children from school, interfered with parent-time, changed the children's enrollment, interfered with phone calls and prevented visitation that should have occurred." The court accordingly determined that Wife was in contempt because "[she] knew of the order applicable to these matters, had the ability to comply and willfully and knowingly refused to do so." "[T]o purge the contempt," the court ordered that Wife pay Husband $3500.

### IV. Attorney Fees in the Divorce Proceeding

¶ 12 The trial court determined that attorney fees as a whole "got out of hand" and

---

**3.** His earnings for this time period were as follows: (1) 1998, $2391; (2) 1999, negative $61; (3) 2000, $600; (4) 2001, $1624. Other testimony at trial suggested that he had made as much as $60,000 per year for a certain number of years prior to 1998, which of course would be of no particular interest to a potential creditor three years later, when he earned a scant 1% of that amount.

were not reasonable. Specifically, with regard to Husband, the trial court found that "[Husband] ha[d] not prevailed on the main issues of this case[,] which were his claims for one-half of [Wife]'s inheritance and enhancement of [Wife]'s inheritance." It further found that the attorney fees sought by Husband were unreasonable and unnecessary as a whole, but it was unable to pinpoint exactly which fees were unnecessary or unreasonable. Additionally, with regard to his fees incurred in "child custody and related matters," the trial court found that Husband had no financial need because his family paid his fees, and he was not "legally" required to reimburse his family. Relying on the fact that Husband did not prevail on the main issue and its conclusion that the fees were not reasonable or necessary, it declined to award Husband any attorney fees. The trial court also declined to award Wife attorney fees because "she ha[d] no financial need" and Husband did not have the "ability to pay" such fees.

## ISSUES AND STANDARDS OF REVIEW

¶ 13 First, Husband claims that the trial court, in the divorce action, abused its discretion in determining that the proceeds from the sale of Wife's stock were Wife's sole and separate property, averring that the proceeds were not an inheritance, were commingled, and were enhanced by his actions. " 'A trial court has considerable discretion concerning property [division] in a divorce proceeding, thus its actions enjoy a presumption of validity.' " *Jensen v. Jensen*, 2009 UT App 1, ¶ 6, 203 P.3d 1020 (quoting *Elman v. Elman*, 2002 UT App 83, ¶ 17, 45 P.3d 176) (alteration in original) (additional internal quotation marks omitted). On appeal, we therefore "will not disturb a property award unless we determine that there has been a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderates against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion." *Id.* (citation and internal quotation marks omitted). Further, "[w]e review the legal adequacy of findings of fact for correctness as a question of law." *Id.*

¶ 14 Second, Wife, in her cross-appeal, challenges the sufficiency of the evidence to support the trial court's factual findings in the divorce proceeding pertaining to the issues of whether Husband used the money obtained from the forged or altered checks for family purposes and whether Wife was in contempt of court for failing to follow a visitation order. "A challenge to the sufficiency of the evidence concerns the trial court's findings of fact. Those findings will not be disturbed unless they are clearly erroneous." *Cummings v. Cummings*, 821 P.2d 472, 476 (Utah Ct.App.1991). A "trial court's factual determinations are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a 'definite and firm conviction that a mistake has been made.' " *Id.* (citation omitted). We review the legal sufficiency of factual findings, *see Jensen*, 2009 UT App 1, ¶ 6, 203 P.3d 1020, and "examine the conclusions of law arising from those findings under a correction-of-error standard, according no particular deference to the trial court." *Cummings*, 821 P.2d at 476.

¶ 15 Third, Husband contests the sufficiency of the evidence with regard to certain factual findings made in the unjust enrichment proceeding. In relation to this argument, Husband alleges that the trial court erred by inappropriately placing the burden of proof on him. Husband further contends that the trial court erred by failing to make findings of fact on his statute of limitations and collateral estoppel defenses and invites this court to rule on those issues as a matter of law. As indicated above, we review a trial court's factual findings under a clearly erroneous standard and the legal sufficiency of those findings, as well as the legal conclusions based on those findings, under a correction-of-error standard. *See Jensen*, 2009 UT App 1, ¶ 6, 203 P.3d 1020; *Cummings*, 821 P.2d at 476. Furthermore, "[b]urden of proof questions typically present issues of law that an appellate court reviews for correctness." *Martinez v. Media–Paymaster Plus*, 2007 UT 42, ¶ 41, 164 P.3d 384.

¶16 Fourth, Wife alleges that the trial court erred in denying her rule 11 motion for sanctions. When reviewing a rule 11 ruling, "[t]he trial court's findings of fact are reviewed under a clearly erroneous standard[, and] its ultimate conclusion that rule 11 was violated and any subsidiary legal conclusions are reviewed under a correction of error standard." *Griffith v. Griffith*, 1999 UT 78, ¶10, 985 P.2d 255.

¶17 Fifth, Husband seeks reversal of the trial court's denial of his rule 60(b) motion. "We will generally reverse a trial court's denial of a rule 60(b) motion only where the court has exceeded its discretion." *Fisher v. Bybee*, 2004 UT 92, ¶7, 104 P.3d 1198. Rulings on "rule 60(b) motions are rarely vulnerable to attack. We grant broad discretion to trial court's rule 60(b) rulings because most are equitable in nature, saturated with facts, and call upon judges to apply fundamental principles of fairness that do not easily lend themselves to appellate review." *Id.* Of course, if the trial court's ruling is entirely based on legal grounds, we will review the ruling for correctness. *See id.*

¶18 Sixth, Husband asks us to overturn the trial court's award of prejudgment interest in the unjust enrichment proceeding because Wife never requested prejudgment interest and the award of damages was on an equitable claim. Whether a trial court properly determined that a party is "entitle[d] to prejudgment interest presents a question of law which we review for correctness." *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 177 (Utah Ct.App.1993).

¶19 And seventh, Husband challenges the trial court's denial of attorney fees and costs in the divorce proceeding, and also seeks attorney fees on appeal.

We review a trial court's attorney fees award in divorce proceedings for abuse of discretion. To demonstrate that the trial court has acted within its allotted discretion, the trial court must base the award on evidence of the receiving spouse's financial need, the payor spouse's ability to pay, and the reasonableness of the requested fees.

*Jensen v. Jensen*, 2009 UT App 1, ¶7, 203 P.3d 1020 (citations and internal quotation marks omitted). "In divorce actions where the trial court has awarded attorney fees and the receiving spouse [prevails] on the main issues, we generally award fees on appeal." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶11, 176 P.3d 476 (alteration in original) (citation and internal quotation marks omitted).

## ANALYSIS

### I. Challenges to the Trial Court's Factual Findings and Legal Conclusions in Both Proceedings

#### A. Failure to Marshal

¶20 Wife asserts that we should not consider Husband's challenges to the trial court's separate property ruling because Husband failed to marshal the evidence in support of the trial court's salient factual findings. Husband, on the other hand, asserts in his reply brief that he did not challenge the sufficiency of the evidence supporting the factual findings or raise any factual questions regarding the separate property issue, and that he therefore was not required to marshal the evidence. *See Jensen*, 2009 UT App 1, ¶8 n. 3, 203 P.3d 1020 ("Husband's arguments address the legal sufficiency of the findings themselves. As such, marshaling is not required."). At oral argument, however, Husband back-pedaled somewhat, indicating that he may have been required to marshal evidence to support the factual findings on commingling but that he really was just challenging the trial court's application of case law. He further asserted that to the extent he was required to marshal the evidence, he actually did—specifically with regard to the unjust enrichment and commingling issues.[4] At oral argument, Wife also asserted, in response to related questions by the panel, that she met her respective marshaling duty.[5]

4. As will be clear when footnote 5 is considered, the odds of successfully—but accidentally—marshaling the evidence when one did not recognize a duty to marshal are slim, indeed.

5. In light of the confusion evidenced in this case

¶ 21 When challenging factual findings, the challenging party "must begin by undertaking the arduous and painstaking marshaling process." *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct.App.1991).

> [T]he marshaling concept does not reflect a desire to merely have pertinent excerpts from the record readily available to a reviewing court. The marshaling process is not unlike becoming the devil's advocate. Counsel must extricate himself or herself from the client's shoes and fully assume the adversary's position. In order to properly discharge the duty of marshaling the evidence, the challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which *supports* the very findings the appellant resists. After constructing this magnificent array of supporting evidence, the challenger must ferret out a fatal flaw in the evidence. The gravity of this flaw must be sufficient to convince the appellate court that the court's finding resting upon the evidence is clearly erroneous.

*Id.* (emphasis in original). The marshaling requirement is not satisfied if parties just list all the evidence presented at trial, or simply rehash the arguments on evidence they presented at trial. *See Neely v. Bennett*, 2002 UT App 189, ¶ 12, 51 P.3d 724, *cert. denied*, 59 P.3d 603 (Utah 2002).

¶ 22 Except for Husband's challenges to the trial court's factual findings on the unjust enrichment issue and Wife's challenges to the trial court's finding that Husband used money from forged or altered checks for family purposes, both parties have failed to meet their respective marshaling duties on their various challenges to the factual findings or highly fact-sensitive legal analysis of the trial

---

regarding when and how a party must engage in a marshaling analysis, and given the oft-expressed frustration of the bar with the marshaling requirement, we take this opportunity to clarify what marshaling really is. In its classic application, marshaling the evidence serves a very important function. It adds discipline and order to challenges to factual findings, precluding an unfocused allegation that the findings lack evidentiary support and requiring the appellate court to comb the record and see if that might possibly be true. Instead, the marshaling doctrine, now recognized in our rules, *see* Utah R.App. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding."), requires that counsel identify which particular findings are challenged as lacking adequate evidentiary support and then show the court why that is so. This can only logically be done by summarizing, or "marshaling," whatever evidence there is that *supports* each challenged finding. We emphasize that only the *supportive evidence* is legally relevant and is all that counsel should call our attention to. *See Neely v. Bennett*, 2002 UT App 189, ¶ 12, 51 P.3d 724 ("[A]n exhaustive or voluminous recitation of all the facts presented at trial, even if this recitation includes within its body the facts that support the challenged ruling, is not what is expected."), *cert. denied*, 59 P.3d 603 (Utah 2002).

If there simply is no supportive evidence, counsel need only say so and the challenge will be well-taken—counsel is not expected to marshal the nonexistent. If there is clearly ample supportive evidence, counsel will properly forego pressing that challenge on appeal. *See, e.g., Mountain States Broad. Co. v. Neale*, 783 P.2d 551, 553–54 (Utah Ct.App.1989) ("[T]he benefits of the [marshaling] requirement are demonstrated by the fact that Mountain States, after its careful review of the evidence, candidly concedes the adequacy of the evidence to support the findings as to all but five of its original claims[.]").

If there is some supportive evidence, once that evidence is marshaled it is the challenger's burden to show the "fatal flaw" in that supportive evidence, *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct.App.1991), and explain why the evidence is legally insufficient to support the finding. Examples of such legal insufficiency might include that testimony was later stricken by the court; that a document was used for impeachment only and had not been admitted as substantive evidence; that a document was not properly admitted because it did not qualify under the business record exception to the hearsay rule; and that testimony that seems to support a finding was recanted on cross-examination.

The pill that is hard for many appellants to swallow is that if there is evidence supporting a finding, absent a legal problem—a "fatal flaw"—with that evidence, the finding will stand, even though there is ample record evidence that would have supported contrary findings. After all, it is the trial court's singularly important mission to consider and weigh all the conflicting evidence and find the facts. No matter what contrary facts might have been found from all the evidence, our deference to the trial court's pre-eminent role as fact-finder requires us to take the findings of fact as our starting point, unless particular findings have been shown, in the course of an appellant's meeting the marshaling requirement, to lack legally adequate evidentiary support.

court. *See Chen v. Stewart*, 2004 UT 82, ¶ 20, 100 P.3d 1177 ("Even where the defendants purport to challenge only the legal ruling, as here, if a determination of the correctness of a court's application of a legal standard is extremely fact-sensitive, the defendants also have a duty to marshal the evidence."). Husband failed to meet his marshaling duty on the commingling and other separate property issues because he just reargued evidence supporting his position. While he did discuss the trial court's factual findings, he did not indicate what evidence supported those findings. Wife also wholly failed to marshal the evidence on the contempt issue as she neither summarizes any evidence that would support the trial court's salient findings nor claims the findings simply lack any evidentiary support whatsoever. We accordingly accept the trial court's findings of fact as valid, on the various issues where the marshaling burden was not met and review the trial court's ultimate legal conclusions in light of those findings. *See Martinez v. Media–Paymaster Plus*, 2007 UT 42, ¶ 19, 164 P.3d 384 ("[P]arties that fail to marshal the evidence do so at the risk that the reviewing court will decline, in its discretion, to review the trial court's factual findings."); *Beesley v. Harris (In re Estate of Beesley)*, 883 P.2d 1343, 1349 (Utah 1994) ("Because [the appellant] has not properly challenged the district court's factual findings, we must presume that the evidence supports the findings and proceed to an examination of the court's 'conclusions of law and the application of that law in the case.' ") (citation omitted).

B. Wife's Stock Proceeds as Separate Property

¶ 23 Husband claims that the trial court abused its discretion in determining that the proceeds from Wife's stock were Wife's sole and separate property. He specifically challenges its legal determination that the stock proceeds were an inheritance that Husband did not enhance and that the parties did not commingle.

¶ 24 "[T]rial courts making 'equitable' property division pursuant to section 30–3–5 should … generally award property acquired by one spouse by gift and inheritance during the marriage (or property acquired in exchange thereof) to that spouse, together with any appreciation or enhancement of its value[.]" *Mortensen v. Mortensen*, 760 P.2d 304, 308 (Utah 1988). But

> [c]ourts have considered inherited property as part of the marital estate when "the other spouse has by his or her efforts augmented, maintained, or protected the inherited or donated property, when the parties have *inextricably* commingled the property with marital property so that it has lost its separate character, or when the recipient spouse has contributed all or part of the property to the marital estate."

*Schaumberg v. Schaumberg*, 875 P.2d 598, 602 (Utah Ct.App.1994) (emphasis added) (quoting *Burt v. Burt*, 799 P.2d 1166, 1169 (Utah Ct.App.1990)). And "even in cases when the inherited property has not lost its identity as such, the court may nevertheless award it to the non-heir spouse in lieu of alimony and in other extraordinary situations when equity so demands." *Id.* "The question of whether a gift or inheritance has remained separate is highly fact intensive and the trial court is in the best position to weigh the evidence and make that determination." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 29, 176 P.3d 476.

¶ 25 Regardless of whether Husband is correct in asserting that Wife's stock proceeds were not an inheritance per se, the trial court nonetheless was correct in characterizing the stock proceeds as Wife's separate property. *See generally Salt Lake County v. Metro W. Ready Mix, Inc.*, 2004 UT 23, ¶ 21, 89 P.3d 155 (" '[A]n appellate court may affirm a trial court's ruling on any proper grounds, even though the trial court relied on some other ground.' To do so, however, the facts established in the record must be sufficient to support the alternative ground.") (alteration in original) (citation omitted). The record and factual findings show that, pursuant to Wife's father's will, his shares in the family business were to be deposited into a certain trust, and that trust was "to be divided into two separate [t]rusts." Wife, her mother, and her siblings were the beneficiaries of the trusts, and they

reached an agreement whereby they wanted to alter the amounts they received to give Wife's mother all the shares outright. Then, pursuant to the family agreement, Wife received 1005 shares of stock in the family business. Irrespective of whether Wife's shares were technically an inheritance,[6] they clearly were her separate property, as her receipt of the shares was a consequence of her father's death and her family's agreement. The intent of her father's will and the family's agreement was that she—not she and Husband—receive the stock. *See Mortensen*, 760 P.2d at 308 ("[T]rial courts making 'equitable' property division ... should ... generally award property acquired by one spouse by gift and inheritance during the marriage (*or property acquired in exchange thereof*) to that spouse, together with any appreciation or enhancement of its value[.]") (emphasis added).

¶ 26 Further, the trial court's factual findings support its determination that Husband did not enhance the property. Husband argues that "[he] played a key role in negotiations over the purchase price of the stock and thereafter managed investment of the sale[']s proceeds." The trial court's factual findings, however, as well as Husband's description of his own actions, indicate that he just "encourage[d]" Wife to look at other offers or "initiated advice from his relatives and family friends regarding negotiations for the purchase price of the stock." The trial court found that "[n]o act of [Husband] increased the amount of shares ... or resulted in [Wife] receiving a greater price for her holdings." Moreover, while Husband claims that he managed all the family's finances, including the stock proceeds, and that such management enhanced and protected the stock's value, he provides no argument or information on what specific actions he took to enhance or protect the value of the stock proceeds.

¶ 27 Even if Husband encouraged Wife to decline the first offer and performed basic management of the family's money, these actions—even ignoring his forgeries, altera-

tions, and misrepresentations—are not the type of active enhancement efforts contemplated by Utah's case law. *See Burke v. Burke*, 733 P.2d 133, 135 (Utah 1987) (determining that the husband did not enhance the wife's inheritance when he only "urged [the wife] to take her inheritance in land rather than in cash"); *Kunzler v. Kunzler*, 2008 UT App 263, ¶ 19 & n. 5, 190 P.3d 497 (stating that the wife's performance of "domestic labors [that] enabled [the h]usband to ranch for longer periods of time without having to, for example, return home to launder his clothes" did not show that the wife enhanced the real property, and that even if an affidavit, which listed all the wife's labors and purported benefits she gave to the ranch, "had been properly admitted into evidence, [the w]ife's claims of assistance therein would not rise to the level present in *Elman* and *Dunn*," two prior cases where spousal enhancement was found), *cert. denied*, 199 P.3d 970 (Utah 2008); *Elman v. Elman*, 2002 UT App 83, ¶¶ 24, 26, 45 P.3d 176 (determining that a partnership's assets were enhanced by the wife's actions when she left private employment to allow the husband "to engage in partnership managing activities" and so that she could manage the household and marital properties, which properties' value increased substantially under her management and of which value the husband received half in the divorce decree); *Dunn v. Dunn*, 802 P.2d 1314, 1318 (Utah Ct.App.1990) (determining that a corporation was a marital asset because it "was founded and operated through the joint efforts and joint sacrifices of the parties" "and its assets accrued during the marriage"; the wife "performed bookkeeping and secretarial services without pay f[rom] the corporation"; and the wife's "efforts were necessary contributions to the growth of [the husband's] practice and the business"). Far more is necessary to actually enhance the value of a separately-owned asset, so as to convert it to marital property, than merely urging a spouse to seek other offers or generally performing ordinary maintenance of family finances.

---

**6.** Notably, counsel indicated at oral argument that Wife paid inheritance tax on the stock pro-

ceeds.

¶ 28 Finally, we also affirm the trial court's determination that the stock proceeds, which were in Wife's individual Fidelity account and not used to purchase family items, were not inextricably commingled with marital funds. This is true even with respect to funds that passed through the joint accounts. As indicated by the trial court's factual findings, the majority of the stock proceeds were placed in Wife's own individual account, and Wife's actions manifested an intent to keep such property separate. While at times the monthly payments from the sale of her stock were deposited in joint accounts, the trial court's description of the accounts as "conduits" rather than "repositories" is apt and supports its determination that the money, while assuming a de facto marital character when present in the joint accounts or used to purchase family items, regained its separate nature when the remainder of the stock proceeds was taken out of those joint accounts and deposited into Wife's individual account. Such funds clearly were not totally consumed by the family, did not lose their identity while in the joint account when they were not inextricably combined, and were not a gift from Wife to Husband or to the family when she removed such funds not designated for family purposes to her own individual account. We accordingly affirm the trial court's determination that the stock proceeds were Wife's sole and separate property and that "[Wife] should be awarded as her sole and separate property all funds that were in the Fidelity Account at the time of the parties' separation."

C. Wife's Contempt

■■■ ¶ 29 Wife challenges the trial court's determination that she was in contempt of court for failing to follow its visitation order, alleging that there was insufficient evidence to support the findings of fact and that the issue of contempt was not even reserved for trial. As indicated above, Wife wholly failed to marshal the evidence in favor of the trial court's findings of fact on this issue, and we

accordingly accept the trial court's findings as valid. *See supra* ¶ 22. The trial court found that "[Wife] failed to provide information about the children['s] activities, removed the children from school, interfered with parent-time, changed the children's enrollment, interfered with phone calls and prevented visitation that should have occurred." It further concluded that Wife's actions were in violation of the court's orders, of which Wife was aware and with which she "had the ability to comply and willfully and knowingly refused to do so." The trial court's findings and conclusions clearly support its contempt determination. *See generally Von Hake v. Thomas,* 759 P.2d 1162, 1172 (Utah 1988) ("As a general rule, in order to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally[7] failed or refused to do so. These three elements must be proven beyond a reasonable doubt in a criminal contempt proceeding, and by clear and convincing evidence in a civil contempt proceeding.") (citations omitted).

■■■ ¶ 30 Further, as argued by Husband, a contempt issue is a collateral matter and as long as the complaining party presents a proper affidavit, a trial court is justified in considering the issue without undue regard for procedural niceties. *See Robinson v. City Court,* 112 Utah 36, 185 P.2d 256, 258 (1947) ("It is necessary, in all proceedings for contempts which are not committed in the presence of the court, in order to give the court jurisdiction, that an affidavit or affidavits be presented to the court stating the facts constituting contempt. A contempt proceeding is separate and apart from the principle action and in order for the court to acquire jurisdiction of the offense when committed, as here, it is necessary that an affidavit or initiating pleading be filed.") (citations omitted); Utah Code Ann. § 78B–6–302(2) (2008)[8] ("When the contempt is not committed in the immediate view and presence of

---

7. While not specifically indicating that Wife "intentionally" disobeyed the trial court's order, such intent is readily inferred from the trial court's factual findings.

8. We cite to the current version of this section because the recent amendments do not affect our analysis or the issue as presented by the parties. *See* Utah Code Ann. § 78B–6–302 amendment notes (2008).

the court or judge, an affidavit or statement of the facts by a judicial officer shall be presented to the court or judge of the facts constituting the contempt."). As Wife does not challenge that a proper affidavit was filed, we conclude the contempt matter was properly before the trial court and affirm its ruling for the reasons discussed.

### D. Husband's Use of Money from Forged or Altered Checks

 ¶ 31 Wife also alleges that there was insufficient evidence presented during the divorce trial to support the trial court's factual finding that Husband used the money obtained from checks he altered or forged for family purposes. She challenges the trial court's original factual findings and its denial of her post-trial motion to alter or amend those findings on the issue. In properly marshaling the evidence with respect to this issue, Wife points out that the trial court indicated, in making its factual findings, that the only evidence before it in the divorce proceeding regarding Husband's use of the money was Husband's self-serving testimony that he did indeed use the money for family purposes. The trial court noted in its ruling on Wife's post-trial motion that Husband had the "burden to show that he used the proceeds from forgery for family purposes" and that, in its discretion, "[t]he court may consider his testimony and give it the weight and credibility it deserves." The trial court clearly found Husband's testimony in the divorce proceeding credible on this point. We determine that its factual findings based on such testimony were not clearly erroneous. *See generally* Utah R. Civ. P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."); *Homer v. Smith*, 866 P.2d 622, 627 (Utah Ct.App.1993) ("Clearly, the fact-finder is in the best position to judge the credibility of witnesses[.]"), *cert. denied*, 878 P.2d 1154 (Utah 1994).

### E. Unjust Enrichment

 ¶ 32 Husband asks us to overturn the trial court's unjust enrichment ruling, alleging that there was insufficient evidence to support its factual findings. Husband does marshal the evidence in support of the trial court's ruling and attempts to "ferret out [the] fatal flaw," *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct.App.1991), by arguing that the trial court erroneously placed the burden of proof on him to show how the funds received from the forged or altered checks were used. He avers that the allegedly inappropriate findings of fact addressing Husband's use of the funds are all related to the trial court's ultimate conclusion that a benefit was conferred on him—a necessary element of an unjust enrichment claim, *see Desert Miriah, Inc. v. B & L Auto, Inc.*, 2000 UT 83, ¶ 13, 12 P.3d 580 ("In order to prevail on a claim for unjust enrichment, three elements must be met. First, there must be a benefit conferred on one person by another. Second, the conferee must appreciate or have knowledge of the benefit. Finally, there must be 'the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.' ") (citations omitted).

¶ 33 Husband's contention that the trial court inappropriately placed the burden of proof on him seems to arise from the way Wife's counsel phrased several of his questions at trial, i.e., what "proof" Husband had to support his self-serving testimony.[9] Our review, however, indicates that no inappropriate shifting of the parties' respective burdens occurred. Rather, the trial took its normal course with Wife presenting her case—including asking Husband relevant questions regarding his self-serving statements—and Husband having the opportunity to present his defense.

¶ 34 There is no doubt that Wife, as the plaintiff who claimed Husband was unjustly

---

9. We note that most of the questions actually asked what "evidence" Husband had, rather than what "proof" Husband had; however, in Husband's counsel's objections to such questions, and in both parties' counsels' closing arguments on the subject, counsel discussed proof and the respective burdens.

enriched, had the burden of proving each element of her unjust enrichment claim by a preponderance of the evidence. *See id.* ("The plaintiff must prove all three elements to sustain a claim of unjust enrichment."); *Hansen v. Hansen,* 958 P.2d 931, 934 (Utah Ct.App.1998) ("[T]he standard of proof generally applied in civil proceedings is the preponderance of the evidence standard."). At trial, Wife presented evidence in the form of canceled checks, which showed that Husband had altered the check amounts "to higher amounts" or signed Wife's name to several checks drawn on her individual account, many of which were made out to "Cash" or to Husband. Husband testified that he received the funds from those checks. When so many checks were forged or altered by Husband and made out to Husband or "Cash," and Husband admitted receiving the funds, the trial court could reasonably infer that Husband benefitted from the money he received from those checks.

¶ 35 As part of proving her case, it was Wife's prerogative to ask Husband how he used the cash received from the checks at issue in an attempt to establish more concretely, rather than just inferentially, whether or not Husband used the money for his own purposes and therefore benefitted from the altered or forged checks drawn on her account. Additionally, when Husband only provided his self-serving and inherently implausible testimony on the issue—i.e., that he used all funds from the forged or altered checks strictly for family purposes [10]—Wife

was entitled to ask if he had other evidence to support such a statement to help undermine his credibility in the event he was unable to substantiate his testimony. *Cf. De Lane v. Moore,* 55 U.S. 253, 264, 14 How. 253, 14 L.Ed. 409 (1852) ("The rule of law is, that the best evidence must be given of which the nature of the thing is capable. . . . The withholding of that better evidence raises a presumption, that if produced, it might not operate in his favor.") (citation and internal quotation marks omitted). Asking such questions did not inappropriately switch the burden of proof but was an attempt by Wife to elicit additional testimony that would help prove her case and impeach Husband's credibility.

¶ 36 As part of his defense, once Wife presented evidence supporting her unjust enrichment claim, Husband needed to present evidence that tended to lessen the credibility or strength of Wife's evidence in order to prevent her from proving her case by a preponderance of evidence. *See Wightman v. Mountain Fuel Supply Co.,* 5 Utah 2d 373, 302 P.2d 471, 473 n. 5 (1956) (indicating that proof by a "[preponderance of the evidence] means the greater weight of the evidence, or as sometimes stated, such degree of proof that the greater probability of truth lies therein") (alteration in original) (citation and internal quotation marks omitted). When Husband only offered his self-serving testimony and was unable to specifically answer questions about how he used the money to benefit the family,[11] the court was in the best

10. Given Wife's consistent willingness to generously use her separate funds for family purposes of which she approved, there is no obvious reason why Husband would need to tamper with checks drawn on Wife's account for the sole purpose of providing for the family.

11. Of some initial concern, Husband insists that he had evidence at trial, in notebooks, that would have explained his use of certain checks, but that the trial court would not let him look through the notebooks. Indeed, at trial, Wife's counsel asked if Husband had evidence to show what he did with certain checks. Husband responded that he might have been "able to produce that evidence, if given sufficient time." He stated that "[he] just need[ed] to check other places in this notebook, if that would be allowed." He also stated that if he was required to present evidence "[i]n the next 30 seconds" that he would not have

evidence to present and requested "a few minutes" to look through the notebooks. The trial court stated, "Let's move onto some other area. I'm not going to give him a few minutes to go through the notebooks." As this line of questioning continued, Husband repeatedly referred to his notebooks but was not given an opportunity to dig through them while on the stand.

We agree with Wife's counsel's assertion at oral argument that this was a proper course of action for the trial court to take when Husband was not prepared for trial and allowing him to look through the books would not necessarily have been productive. *See generally* Utah R. Evid. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) pro-

position to judge his credibility on this issue. It was free to infer from Husband's statements and demeanor either that Husband did not appear to be entirely forthcoming about his use of the money or that he appeared to be lying, which inferences would, of course, tend to lessen his credibility. *See Glauser Storage, LLC v. Smedley*, 2001 UT App 141, ¶ 24, 27 P.3d 565 ("'Clearly, the fact-finder is in the best position to judge the credibility of witnesses and is free to disbelieve their testimony.' Even where testimony is uncontroverted, a trial court is free to disregard such testimony if it finds the evidence 'self-serving and not credible.'") (citations omitted).

¶ 37 On the other hand, the trial court also could, as it did in the divorce proceeding, take at face value Husband's testimony that all checks altered and forged were used for family purposes. In the unjust enrichment proceeding, however, which was more precisely focused on the question and on the issue of whether Husband should be held accountable for his actions, the trial court determined that Husband's testimony was not credible and that Wife's evidence preponderated over Husband's weaker evidence.[12] While Husband's lack of an explanation hurt his credibility and ultimately factored into the trial court's decision, contrary to Husband's assertion the trial court did not determine that Wife succeeded on her unjust enrichment claim only because Husband failed to meet an erroneously misplaced burden of proof regarding his use of the funds.[13] Instead, Wife's evidence and the trial court's factual findings show that the trial court determined Wife met her burden and proved the necessary elements of her unjust enrichment claim by a preponderance of the evidence.

¶ 38 As we conclude that the trial court did not misallocate the burden of proof between the parties, Husband has failed to establish his perceived "fatal flaw" in the trial court's factual findings. So, as explained above, we take the findings as our starting point in evaluating the unjust enrichment determination. The following factual findings support the trial court's determination that Husband received a benefit from the forged or altered checks drawn on Wife's individual account: (1) Husband's testimony regarding his use of proceeds from altered or forged checks "[wa]s not corroborated by any credible evidence"; (2) "bank records d[id] not show [that such proceeds were] deposit[ed] in the household account as would be expected, if the funds were to be expended to support the family"; (3) "[a]t least for the altered checks and those made payable to [Husband] or 'Cash', the proceeds were not used to financially support the ... family"; and (4) Husband took money to "which he was not entitled." Given these findings, we readily

tect witnesses from harassment or undue embarrassment."). We note that if Husband had had all the information in the notebook organized and tabbed so that he could have easily flipped to the documents he needed, the trial court undoubtedly would have reached the opposite conclusion. But, as Husband repeatedly requested "a few minutes" to search for evidence that might help, it does not appear that his notebook was so carefully organized and that he really was requesting an opportunity to undertake a rather unfocused fishing expedition.

12. Conceptually, it is easy to understand how the same judge in one proceeding may find a witness credible on a certain matter but find the same witness incredible on the same matter in a second proceeding in light of other evidence and testimony presented in that second proceeding. *Cf. State v. Murphy*, 92 Utah 382, 68 P.2d 188, 191 (1937) ("But it must be remembered that trials cannot be made mathematical or governed by exact patterns. The human element looms very large. Two trials over exactly the same issues between the same parties will vary greatly

depending on counsel. Some latitude must be given to the personal element."). We note that in the divorce proceeding the trial court only had Husband's testimony regarding how the money was used and that Wife presented the issue to discredit Husband as a witness. The unjust enrichment proceeding, on the other hand, was specifically directed toward determining whether Husband was at fault for his actions and should be penalized, rather than evaluating whether Husband's dishonest behavior made him generally incredible as a witness.

13. While in closing argument Wife's counsel did state that Husband had the burden to prove how he used the funds, it is clear from the trial court's questions, in context, that the court understood counsel meant that once Wife proved Husband obtained the money from the altered checks that Husband, in his defense, needed to counter Wife's evidence by showing that his expenditure of the proceeds was for the family's benefit.

affirm the trial court's unjust enrichment ruling.

## II. Inadequately Briefed Issues

¶ 39 We decline to address Husband's claims regarding his rule 60(b) motion and his statute of frauds and collateral estoppel defenses, and Wife's arguments regarding her request for rule 11 sanctions. *See generally State v. Carter,* 776 P.2d 886, 888 (Utah 1989) (indicating that appellate courts "need not analyze and address in writing each and every argument, issue, or claim raised"). These issues are inadequately briefed by the respective parties. *See Ball v. Public Serv. Comm'n (In re Questar Gas Co.),* 2007 UT 79, ¶¶ 40, 43, 175 P.3d 545 (indicating that the court could have declined to address an argument because it was inadequately briefed when the "overall analysis of the issue [wa]s so lacking as to shift the burden of research and argument to the reviewing court") (citation and internal quotation marks omitted); *West Jordan City v. Goodman,* 2006 UT 27, ¶ 29, 135 P.3d 874 ("This court is not a depository in which the appealing party may dump the burden of argument and research. An adequately briefed argument must provide meaningful legal analysis. A brief must go beyond providing conclusory statements and fully identify, analyze, and cite its legal arguments.") (footnotes and internal quotation marks omitted).

## III. Prejudgment Interest

¶ 40 Husband seeks reversal of the trial court's imposition of prejudgment interest on Wife's unjust enrichment award for two reasons. First, he argues that the prejudgment interest award was inappropriate "because [Wife]'s only claim at issue was unjust enrichment, the damages upon which require the assessment of a fact-finder" and which "were not mathematically certain." Second, he claims that Utah's jurisprudence foreclosed the trial court from awarding prejudgment interest when Wife did not specifically request such interest.

¶ 41 "Under Utah law, prejudgment interest may be awarded to provide full compensation for actual loss." *Dejavue, Inc.*

*v. U.S. Energy Corp.,* 1999 UT App 355, ¶ 24, 993 P.2d 222, *cert. denied,* 4 P.3d 1289 (Utah 2000). Husband correctly asserts that the facts underlying equitable claims typically do not support an award of prejudgment interest because in most equitable cases the damages are not readily calculable to a mathematical certainty. *Cf. Iron Head Constr., Inc. v. Gurney,* 2009 UT 25, ¶ 12, 207 P.3d 1231 ("[P]rejudgment interest is not permissible in cases where the damages are incomplete and are peculiarly within the province of the jury to assess at the time of the trial. This includes cases in which the fact finder is left to determine the amount of damages from a mere description of the wrongs done or injuries inflicted.") (citations and internal quotation marks omitted); *Encon Utah, LLC v. Fluor Ames Kraemer, LLC,* 2009 UT 7, ¶ 53, 210 P.3d 263 ("[L]osses that cannot be calculated with mathematical accuracy are those in which damage amounts are to be determined by the broad discretion of the trier of fact, such as in cases of personal injury, wrongful death, defamation of character, and false imprisonment.") (emphasis, footnote, and internal quotation marks omitted). However, solely "rel[ying] on the nature of the claim" to determine whether prejudgment interest is allowed "is misplaced." *Shoreline Dev., Inc. v. Utah County,* 835 P.2d 207, 211 (Utah Ct.App.1992). Instead, "prejudgment interest may be proper when 'the loss ha[s] been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages.'" *Iron Head Constr., Inc.,* 2009 UT 25, ¶ 11, 207 P.3d 1231 (alteration in original) (citation omitted). "[T]he standard focuses on the measurability and calculability of the damages." *Encon Utah, LLC,* 2009 UT 7, ¶ 52, 210 P.3d 263. We accordingly must analyze whether the particular facts of this case support awarding prejudgment interest on Wife's unjust enrichment award.

¶ 42 Wife presented evidence in the form of several canceled checks that had been forged by Husband and made payable to Husband or "Cash," many of which showed

specific amounts and dates.[14] The trial court calculated its unjust enrichment award based on the dollar amounts written on the forged checks and determined its prejudgment interest award based on the checks that showed a definite amount and date. Accordingly, the prejudgment interest awarded was based on a fixed, readily ascertainable amount because the dollar amount written on each check established "the amount of the loss [that could be] calculated with mathematical accuracy" and "fixed as of a definite time" based on the date written on each check. *Iron Head Constr., Inc.*, 2009 UT 25, ¶ 11, 207 P.3d 1231 ("[P]rejudgment interest was appropriate where the injury and consequent damages are complete and [can] be ascertained as of a particular time and in accordance with fixed rules of evidence and known standards of value.") (second alteration in original) (citation and internal quotation marks omitted). Further, even though the trial court exercised reasonable discretion to determine which checks should be included in the calculation, that does not foreclose a conclusion that the principal amount was readily quantifiable. *See Crowley v. Black*, 2007 UT App 245, ¶ 9, 167 P.3d 1087 (concluding that "[a]lthough the trial court determined which costs to include and which to exclude, this determination did not render the resulting damage award less 'measurable by facts and figures' " when the trial "court reviewed receipts and work orders" and was able "to ascertain both 'the amount due and the due date' ") (citations omitted). The trial court's prejudgment interest award on those amounts is, accordingly, sustainable.

¶ 43 We also reject Husband's argument that the trial court erred in awarding prejudgment interest when Wife never specifically requested it. The prejudgment interest award was appropriate, even absent a specific request by Wife, given that a party is not required "to request prejudgment interest prior to judgment ... because the

interest issue is injected by law into every action for payment of past due money." *Id.* ¶¶ 9–11. And the prejudgment interest awarded clearly did not result in a double recovery for Wife. *Cf. Shoreline Dev., Inc. v. Utah County*, 835 P.2d 207, 211–12 (Utah Ct.App.1992) (requiring the party to specifically request that prejudgment interest be included in the award in unjust enrichment cases because *when a jury hears the case*, uncertainty exists as to the basis of the jury's award and any prejudgment interest awarded by the trial court could result in a "risk of double recovery"). The trial court's factual findings included a detailed listing of each check on which the principal award was based and then separately listed and calculated the prejudgment interest on each amount. Therefore, based on the facts of this case, the prejudgment interest award was proper, and this is so despite the fact that Wife did not specifically request prejudgment interest.

## IV. Attorney Fees

### A. Attorney Fees in the Divorce Proceeding

¶ 44 The trial court determined that Husband was not entitled to an award of attorney fees—taking into account the fact that Husband did not prevail on the main issue [15]—because the "matter got out of hand," the fees were "neither reasonable nor necessary," and Husband had no need to pay certain fees when those fees had already been paid by his family and he was not "legally" required to repay his family. Husband argues that "[t]here is no sound analytical basis upon which a trial court can distinguish attorney[ ] fees and costs that are currently represented as a debt to his attorney from those represented as a debt to his parents, bank, or otherwise." He also contends that if the fees were not reasonable in some respect, the trial court should not have denied the award in its entirety but, instead, should have awarded the fees it determined

14. The dates on some checks were apparently illegible and the court did not award prejudgment interest on those checks.

15. We note that whether Husband prevailed is not dispositive as concerns an award of attorney fees in a divorce proceeding at the trial level.

*See Jensen v. Jensen*, 2008 UT App 392, ¶ 29, 197 P.3d 117 ("Utah Code section 30-3-3 permits trial courts to award attorney fees in divorce proceedings to either party regardless of who prevails[.]").

to be reasonable. We agree with Husband in both respects.

¶ 45 When reviewing requests for attorney fees in divorce proceedings,

[b]oth the decision to award attorney fees and the amount of such fees are within the trial court's sound discretion. However, the trial court's award or denial of attorney fees must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees.

*Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 10, 176 P.3d 476 (alteration in original) (citations and internal quotation marks omitted).

¶ 46 In determining whether a spouse has a reasonable financial need, courts generally look to the requesting spouse's income, including alimony received as a result of a divorce decree; the property received via the property distribution award; and his or her expenses. *See, e.g., Child v. Child*, 2008 UT App 338, ¶ 8, 194 P.3d 205 (mem.) (affirming trial court's denial of attorney fees when "the trial court determined that Wife was not in need of such assistance, relying upon an earlier order which provided each party with '$18–20,000 . . . from which to retain attorneys and pay costs' and upon each party receiving 'a substantial property distribution free and clear of debt' ") (omission in original), *rev'd on other grounds*, 2009 UT 17, 206 P.3d 633; *Davis v. Davis*, 2003 UT App 282, ¶ 15, 76 P.3d 716 ("Wife demonstrated a need to have some assistance with payment of her attorney fees given that her monthly expenses exceeded her income by over $700."); *Griffith v. Griffith*, 959 P.2d 1015, 1021 (Utah Ct.App.1998) (affirming trial court's decision not to award attorney fees when "the court noted that there was no financial need for fees as both parties were gainfully employed and had approximately equal post-divorce income"), *aff'd*, 1999 UT 78, 985 P.2d 255; *Larson v. Larson*, 888 P.2d 719, 726–27 (Utah Ct.App.1994) (affirming trial court's decision not to award attorney fees when the wife "receive[d] income by way of alimony in the amount of $3000 per month, and ha[d] a secured distribution of approximately $108,000 due to be paid to her" and

"[t]he costs and attorney fees in question total[ed] $5,077.40"). Throughout the course of a divorce proceeding, if a spouse is in need of financial assistance to pay an attorney, he or she, in most cases, will incur debt to retain and maintain an attorney's services. Whether that debt is to an attorney, a bank, family, or a friend is not determinative of whether the spouse has a need, but the very existence of indebtedness to fund legal services may tend to show need.

[42] ¶ 47 Whether the other spouse is able to assist and should be held accountable for a portion of those fees, in light of the distribution of the marital estate, remain pertinent issues to be addressed. *Cf. Peterson v. Peterson*, 818 P.2d 1305, 1310 (Utah Ct. App.1991) ("Costs in divorce litigation are treated differently from other civil litigation because the costs of such litigation, whether taxable or nontaxable, will ordinarily be paid from the marital estate, which the court is equitably empowered to divide between the parties."). While considering whether a spouse has already paid fees, and the source of such money to pay those fees, may be factors in determining whether fees should be awarded, we hold that such facts are not determinative of the need issue. Rather, courts should evaluate the requesting spouse's personal ability to pay based on his or her income, assets, and expenses, taking into account money expected to be earned or distributed in light of the divorce decree. *Cf. Andrus v. Andrus*, 2007 UT App 291, ¶ 19, 169 P.3d 754 ("The trial court's findings regarding [the husband's] ability to pay attorney fees are similar to those regarding alimony in that the trial court has not adequately shown the steps it took in reaching its decision. . . . A correct calculation of his disposable income is an important step in determining [the husband's] ability to pay, so we therefore remand to the trial court for more specific and adequate findings.").

¶ 48 We accordingly remand this issue to the trial court to determine whether Husband was personally able to pay his attorney fees based on his income and expenses, and given the sums he will receive as a result of the divorce decree. While the court may also consider whether and how those fees

were already paid, such payment should not be determinative of the issue—especially if Husband is expected to repay his family in due course, even if the family members are disinclined to commence a collection action to enforce such repayment.

¶ 49 The trial court in this case also based its determination that fees were not warranted on its conclusion that the fees were excessive in amount and therefore were not reasonable or necessary. Husband does not challenge the trial court's conclusion that the requested attorney fees were unreasonable but instead challenges the trial court's failure to take the next step and award fees in such amount as it deemed reasonable.

■■■ ¶ 50 We agree with Husband that a finding of unreasonableness does not end the attorney fees inquiry. *Cf. Rasband v. Rasband,* 752 P.2d 1331, 1336 (Utah Ct.App. 1988) (affirming the trial court's determination that fees were not reasonable and its *reduction* of requested amount). If attorney fees are otherwise warranted, the trial court should then make factual findings showing why the requested amount should be reduced to some ascertainable, reasonable figure. *Cf. Martindale v. Adams,* 777 P.2d 514, 517–18 (Utah Ct.App.1989) ("Where the evidence supporting the reasonableness of requested attorney fees is both adequate and entirely undisputed, ... the court abuses its discretion in awarding less than the amount requested *unless* the reduction is warranted by one or more of the factors described in *Dixie State Bank v. Bracken,* 764 P.2d 985, 987–91 (Utah 1988). To permit meaningful review on appeal, it is necessary that the trial court, on the record, identify such factors and otherwise explain the basis for its sua sponte reduction.") (additional citations omitted) (emphasis in original).

¶ 51 Here, because the trial court also denied fees based on its conclusion that Husband had no need, the trial court likely believed it was unnecessary to go through the process of reducing the fees Husband had incurred to a reasonable, awardable level. In light of our reversal of the need decision, however, if on remand the trial court determines Husband does have a need for assistance in paying his attorney fees, it should

then make factual findings showing why the requested fees should be reduced to the amount it deems reasonable based on the pertinent factors. *See generally Morgan v. Morgan,* 795 P.2d 684, 688 (Utah Ct.App. 1990) ("Reasonable attorneys fees are not measured by what an attorney actually bills, nor is the number of hours spent on the case determinative in computing fees, ... [a] court may consider, among other factors, the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.") (alteration and omission in original) (citation and internal quotation marks omitted).

### B. Attorney Fees on Appeal

■■ ¶ 52 Husband further requests his attorney fees on appeal. " 'Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal.' " *Leppert v. Leppert,* 2009 UT App 10, ¶ 29, 200 P.3d 223 (citation omitted). The trial court did not award attorney fees to Husband below, but we have held that such fees may have been warranted and remand for further consideration of the issue. Husband, however, has not substantially prevailed on appeal, as he only succeeded on the attorney fees issue. He is therefore not entitled to an award of attorney fees incurred on appeal.

### CONCLUSION

¶ 53 Husband's challenge to the trial court's failure to make findings on his affirmative defenses and to its rulings on his 60(b) motion in the unjust enrichment proceedings, as well as Wife's argument that the trial court improperly denied her rule 11 motion for sanctions, are inadequately briefed. We accordingly affirm the trial court's rulings on those issues.

¶ 54 We conclude that the trial court, in the divorce proceeding, correctly determined

that Wife's stock proceeds were separate property that was not commingled, given that the joint accounts were just a conduit for the stock proceeds and that Husband did not enhance the stock proceeds through his general recommendations regarding the sale of Wife's stock and his general handling of the marital funds. The trial court also properly determined that Wife was in contempt of court when she failed to obey certain visitation orders. The trial court did not improperly shift the burden of proof to Husband in the unjust enrichment action. Further, the prejudgment interest on Wife's unjust enrichment award is sustainable because the damages were fixed and definite in time and amount—conclusions about which there is not the typical uncertainty given that the trial was to the bench.

¶ 55 With regard to whether Husband was entitled to attorney fees incurred below, we reverse, as the trial court inappropriately determined that Husband had no need for assistance because Husband's family paid his fees. We accordingly remand to the trial court for a proper evaluation of whether Husband had a demonstrated need, in accordance with the framework set forth in this opinion. If on remand the trial court determines that Husband does indeed have such a need, it should make factual findings and adjust the requested fees to an amount it deems reasonable. Finally, as Husband did not substantially prevail on appeal, we do not award him his attorney fees on appeal. In sum, we affirm the trial courts' rulings in the two actions, excepting the attorney fees determination, which we remand for further consideration.

¶ 56 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and JUDITH M. BILLINGS, Senior Judge.