2011 UT App 23

**STATE of Utah, Plaintiff and Appellee,**

v.

**Alan R. WILLEY, Defendant and Appellant.**

No. 20071021–CA.

Court of Appeals of Utah.

Jan. 27, 2011.

Sara Pfrommer, Park City, for Appellant.

Mark L. Shurtleff and Christine F. Soltis, Salt Lake City, for Appellee.

Before Judges McHUGH, ROTH, and CHRISTIANSEN.

MEMORANDUM DECISION

ROTH, Judge:

¶ 1 Defendant Alan R. Willey appeals his convictions for sexual abuse of a child, *see*

Utah Code Ann. § 76–5–404.1 (Supp.2010),[1] alleging that he received ineffective assistance of counsel. We affirm.

¶ 2 Willey, an elementary school teacher, was accused of having sexually abused one of his fourth grade students (Child). The sexual abuse occurred throughout the school year from 1993 into 1994 when Child was nine years old, but Child did not report the abuse until over a decade later, when he was in his early twenties. Child reported that Willey would massage Child's shoulders, run his hands underneath Child's shirt to rub his bare chest and pinch his nipples, and crouch next to Child's desk to fondle his genitals. The chest touching occurred almost daily while the genital fondling occurred at least once a month. This touching occurred in the classroom while other students were present.

¶ 3 Willey was tried twice for these offenses: the first trial ended in a hung jury while the second trial resulted in his conviction. At both trials, the primary witnesses were Child and four other students from his fourth grade class who recalled seeing the chest touching and/or the genital fondling.[2] At the first trial, the State also called six 404(b) witnesses who testified to having been similarly sexually abused by Willey when they were his students in different classes and at different schools.[3] *See generally* Utah R. Evid. 404(b). At the second trial, however, the State elected not to use these 404(b) witnesses, having concluded that they distracted from the ultimate issue of whether Willey had sexually abused Child.[4]

¶ 4 Between the two trials, the State widened its investigation by interviewing twelve more of Child's former classmates: two did not recall any inappropriate touching; two recalled that Willey had been "weird" but recalled only that Willey favored Child and would occasionally hug him or rub his shoulders; the remaining eight, however, remembered that Willey would repeatedly rub Child's chest under his shirt. One of these eight former classmates further recalled that Willey would crouch down next to Child's desk. None of these twelve former classmates recalled seeing any genital fondling.

¶ 5 In addition, the State discovered notes handwritten by a school administrator from another school district where Willey had taught prior to the events involving Child. These notes confirmed that teachers and parents had complained that Willey was inappropriately touching boys in his classes. This administrator did not report these allegations to the police but cautioned Willey not to do anything inappropriate with his students and directed the school principal to monitor Willey more closely. The next year, the same administrator received additional complaints about similar inappropriate touching but handled the matter in the same way by instructing the principal to closely monitor Willey, encouraging the parents not to say anything about the touching, and telling Willey that if he sought psychiatric help, he would keep the allegations out of Willey's personnel file.[5] The following year, Willey transferred to another school district—the school district in which Child attended school and where the events alleged here occurred. Similar com-

1. For convenience to the reader, we cite to the current version of the Utah code.

2. One of Child's former classmates recalled Willey fondling Child's genitals. Two of the other former classmates recalled that Willey would frequently crouch or kneel next to Child's desk: one was unable to see what Willey did with his hands; the other recalled that Willey would put his hand or fingers up Child's shorts. The fourth classmate only recalled the chest touching. Another witness who testified at both trials was a mother of one of Child's former classmates. This particular classmate had reported both the chest and genital touching to her mother, but although the mother recalled what her daughter had told her, she did not report the touching to anyone at that time.

3. Initially, the district court only allowed two of the six 404(b) witnesses to testify at trial. However, the court ruled at a later point in the first trial that the defense had opened the door to the remaining 404(b) witnesses.

4. The State, however, reserved the option to present this evidence if necessary to rebut arguments made by the defense.

5. The inappropriate touching reported in this school district included a complaint from one of the State's 404(b) witnesses who had testified at Willey's first trial. That student and several of his classmates confirmed that Willey had frequently touched him on his chest and genitals.

plaints of inappropriate touching were made at this school district and were handled similarly to the previous complaints.

¶ 6 At both trials, Willey's trial counsel presented a memory confabulation defense,[6] calling into question the reliability of Child's decade-old memory, specifically by alleging that a "good," encouraging touch by a teacher had been distorted in Child's memory over time into a "bad," sexual touch. Willey's trial counsel also attempted to undermine the credibility of the memories of the State's other witnesses, either by highlighting the inconsistencies in the testimonies of the students in Child's class or by calling into question the reliability of the 404(b) witnesses due to circumstances surrounding the reporting of their allegations.

¶ 7 Trial counsel's defense strategy was formed through consultation with a memory expert he had used in several other cases. Before the first trial, counsel discussed with this expert the potential benefits and detriments of using a memory confabulation defense under the facts of this case. After reviewing the evidence that was available for the first trial, both trial counsel and the expert agreed that the testimonies of Child's former classmates and the 404(b) witnesses were generally corroborative of Child's allegations of sexual abuse. The recollections of Child's former classmates tended to confirm that Child had been touched in an inappropriate and sexual manner when Willey would massage Child's shoulders and run his hands under Child's shirt to rub his chest. That Child had been touched in such an inappropriate manner made it difficult to argue that Child had confused a "good" touch with a "bad" touch, thus undermining trial counsel's defense theory that Child's memories were the result of memory confabulation. Additionally, the instances of abuse alleged by the 404(b) witnesses were separate incidents of sexual abuse that were contemporaneous with and occurred independently of the incidents of sexual abuse alleged by Child. Thus, these separate incidents of sexual abuse likely did not influence Child's memo-

ry. During their consultation, the memory expert further inquired whether there was a paper trail of any other independent or contemporaneous complaints made against Willey for inappropriate or sexual touching and opined that, if there were, such evidence would significantly undermine a memory confabulation defense. The memory expert also candidly explained that given the corroborating evidence available before the first trial, he could be compelled to testify under cross-examination by the State that Child's memory of the sexual abuse did not appear to be the result of contamination. Trial counsel was further concerned that a memory expert's testimony would potentially open the door to admission of the 404(b) witnesses. Accordingly, instead of presenting a memory confabulation defense through an expert whose testimony counsel believed could end up bolstering the State's case, he elected to present such a defense by cross-examining the witnesses so as to highlight the discrepancies in or questionable circumstances surrounding their testimonies.

¶ 8 Trial counsel's decision not to have a memory expert testify at trial was further reinforced by the additional evidence that came to light between the first and second trials: not only did the State discover more of Child's former classmates who gave generally corroborative statements that Willey had touched Child inappropriately, but the school administrator's notes amounted to a paper trail of independent, contemporaneous corroboration of inappropriate touching. Trial counsel recognized the school administrator's notes as "exactly the information that [his expert] said would sink the ship." Although the collective evidence from Child's former classmates, the 404(b) witnesses, and the administrator's notes did not specifically corroborate that Willey had touched Child's genitals, trial counsel believed that this evidence did tend to show that Willey had touched Child or other children inappropriately, thus undermining a memory confabulation defense that Child had in his mind turned a "good" touch into a "bad" touch. Trial counsel therefore chose to employ the

---

**6.** In this case, memory confabulation was described as "a mixture of fact and fantasy" where "there was some event and then the event has

become twisted ... over time so that it's not accurately reported."

same strategy at the second trial that he had employed at the first trial: challenge the witnesses' credibility through cross-examination rather than relying on a memory expert whose testimony could potentially be used to bolster the State's case.

¶ 9 Willey now appeals his conviction, alleging that he received ineffective assistance of counsel. On filing this appeal, Willey filed a motion under rule 23B of the Utah Rules of Appellate Procedure, requesting temporary remand to the district court for an evidentiary hearing for "findings of fact[ ] necessary for the appellate court's determination of a claim of ineffective assistance of counsel." Utah R.App. P. 23B(a). Specifically, Willey requested a 23B hearing to determine whether trial counsel had been ineffective "for failing to ... call an expert on the science of human memory." This court granted Willey's motion, permitting "an evidentiary hearing for the limited purpose of entering findings of fact relevant to the determination of whether trial counsel's actions in failing to obtain testimony from an expert on human memory constituted ineffective assistance of counsel." *See generally id.* R. 23B(e) ("Any claims of ineffectiveness not identified in the order of remand shall not be considered by the trial court on remand, unless the trial court determines that the interests of justice or judicial efficiency require consideration of [the] issues not specifically identified in the order of remand."). The issue was thus remanded to the district court to "enter written findings of fact concerning the claimed deficient performance by counsel ... in accordance with the order of remand." *Id.*

¶ 10 In accordance with rule 23B and the remand order, the 23B hearing focused on whether Willey's trial counsel had been ineffective in failing to have a memory expert testify at trial and the effect such testimony

could potentially have had under the circumstances of this case. At the conclusion of the 23B hearing, after receiving testimony from Willey's trial counsel as well as Willey's memory expert, the district court stated that it could "see no facts to support an ineffective assistance of counsel claim in this case," finding that "[t]rial counsel [had been] effective and exercised extreme experience and wisdom in representing [Willey]." The district court found that after consulting with an expert on memory, trial counsel made the tactical "decision to not call a memory expert to testify at trial" because of "concern that the memory expert may actually bolster the State's case and therefore be detrimental to [Willey's]" defense. The district court further found that trial counsel's decision not to use a memory expert was also part of a tactic to avoid opening the door to potential 404(b) witnesses as well as other witnesses whose statements trial counsel considered corroborative of the sexual abuse.[7] In addition to finding that trial counsel had been effective, the district court further found that Willey's memory expert, although "possess[ing] exceptional academic credentials," was not credible and "demonstrated intellectual dishonesty" "because of ego, bias, prejudice, lack of actual trial experience, ... [and] total unfamiliarity with ... [Utah] law."[8]

¶ 11 "In ruling on an ineffective assistance claim following a [r]ule 23B hearing, we defer to the trial court's findings of fact...." *State v. Hernandez*, 2005 UT App 546, ¶ 13, 128 P.3d 556 (alteration in original) (internal quotation marks omitted). Factual findings entered pursuant to a rule 23B hearing are subject to the marshaling requirement. *See* Utah R.App. P. 23B(g) ("The findings of fact entered pursuant to this rule are reviewable under the same standards as the review of findings of fact in other ap-

---

**7.** It is not immediately apparent from its findings whether the district court is referring to opening the door to the 404(b) witnesses at the first trial or the second trial. Upon reviewing the testimony from the 23B hearing, however, it appears that opening the door to the 404(b) witnesses was one of trial counsel's concerns at both trials.

**8.** At the conclusion of the 23B hearing, the district court expressed some concern that a remand order for a 23B hearing appears to create

a presumption of ineffectiveness, stating that it found this remand order "somewhat objectionable as it tends to legitimize the claim that trial counsel was ineffective." We take this opportunity to clarify that a remand order for a 23B hearing is in no way a judgment on counsel's effectiveness. Rather, it is a mechanism to perfect the record so as to provide this court with adequate facts in order to review a claim for ineffective assistance of counsel.

peals."); *id.* R. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding.").

> [T]he marshaling concept does not reflect a desire to merely have pertinent excerpts from the record readily available to a reviewing court. The marshaling process is not unlike becoming the devil's advocate. Counsel must extricate himself or herself from the client's shoes and fully assume the adversary's position. In order to properly discharge the duty of marshaling the evidence, the challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced ... which *supports* the very findings the appellant resists. After constructing this magnificent array of supporting evidence, the challenger must ferret out a fatal flaw in the evidence. The gravity of this flaw must be sufficient to convince the appellate court that the court's finding resting upon the evidence is clearly erroneous. The marshaling requirement is not satisfied if parties just list all the evidence presented at trial, or simply rehash the arguments on evidence they presented at trial.

*Kimball v. Kimball*, 2009 UT App 233, ¶ 21, 217 P.3d 733 (citations and internal quotation marks omitted).

¶ 12 On appeal, Willey has failed to adequately marshal the evidence to challenge the district court's findings of fact. Although Willey has recited the facts of this case in great detail and has presented a thorough argument in support of his position that his trial counsel was ineffective, his appellate argument amounts to a reassertion of his position at the 23B hearing. In this regard, critical facts that support the district court's findings are notably absent from his analysis. For example, among the most significant pieces of evidence that Willey fails to acknowledge are the administrator's notes, which would serve as independent, contemporaneous corroboration of allegations that Willey had repeatedly, over time, and at different schools touched his male students inappropriately—and not just on their shoulders or chests but on their genitalia. Although this evidence is mentioned in Willey's recitation of the facts, it is not once considered in his analysis.

¶ 13 Another significant weakness in Willey's analysis is his unquestioning assumption that much of the evidence he claims trial counsel failed to adequately investigate or use at trial helps his defense. For example, Willey takes the position that the statements of and testimonies from Child's former classmates that Willey massaged Child's shoulders or rubbed Child's chest under his shirt are not corroborative of Child's testimony because these students did not see Willey touch Child's genitals. Willey therefore argues that his trial counsel was ineffective for not pursuing and using this evidence on the assumption that it would only have been helpful to his defense. Willey is unwilling to consider, however, that the State could counter with an equally reasonable argument that this evidence demonstrated that Willey had been progressively transgressing the boundaries of appropriate touching between a teacher and student, moving from an arguably encouraging touch of Child's shoulder, to the clearly inappropriate and arguably sexual touching of his chest skin to skin, then to the criminal touching of his genitals. By insisting on presenting the evidence in the light most favorable to his defense, Willey simply fails to extricate himself from the advocate's role and consequently neglects the marshaling requirement, which requires Willey to show why the district court considered this evidence to be corroborative of the State's case and then "ferret out a fatal flaw" in that logic. *See id.*

¶ 14 Finally, Willey's arguments at the 23B hearing relied heavily on the testimony of his memory expert, as do his arguments on appeal, presuming both his expert's credibility and the indisputable weight of his testimony. Although Willey briefly acknowledges that the district court considered his expert to be biased, he nonetheless fails to address the district court's wholesale rejection of his expert's testimony based on the court's finding that the expert was not credible and that his testimony "demonstrated intellectual dishonesty" "because of ego, bias, prejudice, lack of

actual trial experience, ... [and] total unfamiliarity with ... [Utah] law." [9]

¶ 15 Ultimately, Willey has failed to fully acknowledge and undertake the burdens of marshaling the evidence, for despite the obvious effort put into Willey's appellate argument, it still amounts to merely "list[ing] all the evidence presented ... or simply rehash[ing] the arguments on [the] evidence ... [that was] presented" to the district court. *See id.* Willey has failed to adequately challenge the district court's key factual findings that his trial counsel's decision not to have an expert on memory testify at trial was part of a sound trial strategy and that the testimony of his own memory expert was not credible. We accordingly accept the district court's factual findings as true. *See id.* ¶ 22 (accepting factual findings as true in light of appellant's failure to marshal the evidence and reviewing the ultimate legal issue in light of those findings).

¶ 16 In presenting his ineffective assistance of counsel argument to this court, Willey has alleged three separate claims of ineffectiveness: in addition to alleging that trial counsel was ineffective in failing to have an expert on memory testify at trial, Willey alleges that trial counsel failed to adequately investigate both a police officer's interviewing techniques and the statements given by Child's twelve former classmates between the two trials. Although Willey purports to raise these arguments on appeal as three separate claims of ineffectiveness, a closer reading of his arguments leads us to the conclusion that these claims are interrelated: Willey's overarching argument that a memory expert was necessary to develop a memory confabulation defense is, in part, premised

on his arguments that the police officer's interviewing techniques affected witnesses' memories, and that the inconsistencies between the recollections of Child and Child's former classmates were likely influenced or distorted by outside factors that a memory expert could identify.

¶ 17 This interpretation of Willey's appellate argument is supported by the 23B hearing and its surrounding circumstances. Willey's motion requesting a 23B hearing focused solely on whether his trial counsel had been ineffective in failing to retain an expert on memory to testify at trial, and this court's remand order was commensurately limited. At the 23B hearing itself, the issues concerning the investigating police officer's interviewing techniques and the statements given by Child's former classmates were presented to the district court, not as separate claims of ineffectiveness, but as points supporting the claim that trial counsel was ineffective for failing to have a memory expert testify at trial. And when the district court entered its factual findings from the 23B hearing, Willey did not request that these issues be treated separately. Thus, the district court was never presented with the need to "determine[ ] that the interests of justice or judicial efficiency require consideration of issues [that had not been] specifically identified in the [remand] order." *See* Utah R.App. P. 23B(e) (stating further that "[a]ny claims of ineffectiveness not identified in the order of remand shall not be considered by the trial court on remand" unless the trial court determines otherwise in accordance with this rule). In its findings of fact, the district court treated all of Willey's arguments as integral parts of a single claim of ineffectiveness.[10] We

---

9. The credibility of Willey's memory expert at the 23B hearing is relevant to establish whether, under the facts of this case, trial counsel was ineffective for not retaining a memory expert to testify at trial and whether retention of such a memory expert would likely have affected the trial's outcome. However, the district court's negative assessment of the memory expert's testimony does not impugn that expert's qualifications nor the validity of the scientific discipline that is the subject of inquiry. This is not a case about the legitimacy of the concept of memory confabulation nor its potential utility as a defense in a case relying on memories of distant events; rather, the issue here is whether trial counsel

was ineffective for concluding that, under the facts of this particular case, calling such an expert had the potential for more risk than benefit.

10. On appeal, Willey complains that these "other instances of ineffectiveness ... [were] totally ignored by the district court in its findings." We fail to see, however, how the district court could have treated these arguments as separate claims of ineffectiveness when (1) they were not identified as separate claims in his motion for a 23B hearing or in our remand order and (2) they were not presented as separate claims of ineffectiveness to the district court at the 23B hearing.

therefore do the same on appeal. As a consequence, Willey's failure to marshal the evidence to challenge the district court's factual findings limits our review of these other issues as well.

¶ 18 Having accepted the district court's factual findings from the 23B hearing, we conclude that trial counsel's decision not to have a memory expert testify at trial fell well within the bounds of sound trial strategy because of counsel's legitimate concerns about the potentially detrimental effect of such expert testimony. *See generally State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (stating that to mount an ineffective assistance of counsel claim, the burden is on the defendant to overcome the "strong presumption" that counsel's actions were "sound trial strategy" to "demonstrate that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment" (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984))). And regardless of Willey's failure to marshal the evidence, after thoroughly reviewing the transcript from the 23B hearing we see nothing to call into question either that conclusion or the district court's factual findings that support that conclusion.

¶ 19 A final issue is Willey's reliance on *State v. Clopten*, 2009 UT 84, 223 P.3d 1103, in support of his ineffective assistance of counsel claim. Willey reads *Clopten* as establishing a bright line rule that use of a memory expert is required in cases where the interrelationship of perception, memory, and passage of time is implicated in a defense. *Clopten* is distinguishable from this case, however, because the issue presented there for the supreme court's review was "whether expert testimony regarding the reliability of eyewitness identification should be presumed admissible when timely requested" under rule 702 of the Utah Rules of Evidence. *Id.* ¶ 6. In contrast, the issue presented here is whether Willey's trial counsel was ineffective in failing to present expert testimony at trial to support a memory confabulation defense. Thus, the issue here is not whether a memory expert's testimony would have been admissible but whether trial counsel was ineffective for not presenting such expert testimony in this case. While *Clopten* certainly suggests that, in general, it may be wise or even expected in appropriate cases to present expert testimony on the inherent weaknesses of eyewitness or memory testimony, *see id.* ¶¶ 15–29, it does not go so far as to imply that a failure to do so presumptively renders counsel ineffective without regard for the circumstances of a particular case. Counsel's decision to proceed without a memory expert was based on considerations unique to the circumstances of this case and therefore *Clopten*'s more general holding does not control.

¶ 20 We affirm.

¶ 21 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge, and MICHELE M. CHRISTIANSEN, Judge.